UNITED STATES of America, Petitioner,

v.

Howard McALLISTER, Respondent.[1]

Civ. No. 4–93–836(DSD/JMM).

United States District Court,
D. Minnesota,
Fourth Division.

March 27, 1997.

---

1. When Howard McAllister filed his Motion for Review of Commitment Order, the Clerk of Court reopened the file captioned *United States of America v. Howard McAllister*, Civil No. 4:93–836 (DSD/JMM). Under the Federal Rules of Civil Procedure, "[e]very pleading shall contain a caption setting forth the name of the court, the title of the action [and] the file number." Fed. R.Civ.P. 10(a). Because an existing file was reopened, the Court will retain the Court's original caption, even though Howard McAllister is technically the Petitioner in this action because he is the party that initiated this lawsuit by filing his Motion for Review of Commitment Order. While Mr. McAllister bears the burden of proof in this action, *see infra,* he will be referred to throughout this Report and Recommendation as the Respondent for sake of consistency with the original court caption.

Mary Trippler, Asst. U.S. Atty., Minneapolis, MN, for U.S.

Andrea George, U.S. Public Defenders Office, Minneapolis, MN, for McAllister.

## ORDER

DOTY, District Judge.

Based on the Findings of Fact, Conclusions of Law, and Recommendation by United States Magistrate Judge John M. Mason dated March 10.1997, all files and records, and no objections having been filed to said Recommendation,

IT IS HEREBY ORDERED THAT:

1. The Respondent's Motion for Review of Commitment Order pursuant to 18 U.S.C. § 4247(h) [Docket No.13] is denied: and

2. The Respondent shall remain in the custody of the United States Attorney General.

## REPORT AND RECOMMENDATION

MASON, United States Magistrate Judge.

### INTRODUCTION

On March 8, 1994, this Court ordered that the Respondent Howard McAllister be committed to the custody of the Attorney General pursuant to 18 U.S.C. § 4246(d). [Docket No. 11]. On December 11, 1996, the Respondent filed with the Clerk of Court a Motion for Review of Commitment Order pursuant to 18 U.S.C. § 4247(h) and for a Temporary Stay of Involuntary Medication. [Docket No. 13]. No response was filed by the government. On January 28, 1997, the Respondent renewed his Motion for a Temporary Stay of Involuntary Medication [Docket No. 14], which the Court granted on January 29, 1997. The Court took this action based upon Respondent's counsel's representation that Respondent was entitled to a temporary stay of involuntary medication "because the last time he received psychotropic medication, it resulted in his near death, causing failure of a vital organ." [Docket No. 15]. The Court ordered that the stay remain in place until further order of the Court.

On February 5, 1997, this Court ordered that an evidentiary hearing take place on March 4, 1997 at the Federal Medical Center in Rochester, Minnesota ("FMC–Rochester") to address the merits of Respondent's Motion for Review of Commitment Order and the issue of whether the Court's Order of January 29, 1997, granting the Respondent's Motion for a Temporary Stay of Involuntary Medication, should remain in effect. [Docket No. 18]. On or about February 21, 1997, the Respondent himself sent a letter to this Court requesting the appointment of a "health care guardian." [Docket No. 19] The Court held a telephone conference with counsel on February 28, 1997, at which time the parties agreed that the evidentiary hearing on March 4, 1997 would also address the Respondent's letter-motion for the appointment of a health care guardian. [Docket No. 20]. On March 4, 1997, the scheduled evidentiary hearing was held at FMC–Rochester. Mary Trippler, Esq., appeared on behalf of the United States; Andrea George, Esq., appeared on behalf of the Respondent, who was personally present.

This matter is now before the Court on the Respondent's Motion for Review of Commitment Order pursuant to 18 U.S.C. § 4247(h). [Docket No. 13]. Based upon all of the files, records, and proceedings herein, this Court finds that the Respondent's Motion should be denied and that he should remain in the custody of the Attorney General. In order to be eligible for release, the Respondent bears the burden of showing that he has recovered from his mental disease or defect to such an extent that he would no longer pose a danger to persons or property. The Respondent has failed to meet that burden.[2]

---

2. The issues of whether a health care guardian should be appointed and whether the Court's temporary stay of involuntary medication should remain in effect will be addressed in a separate Report and Recommendation.

## FINDINGS OF FACT/REPORT
### Procedural History

The Respondent was previously in the United States Army, where he served for twenty-seven years and attained the rank of Army Sergeant Major. He was retired from the Army on a full medical disability in approximately June 1991 based upon his psychiatric condition. On August 16, 1991, Respondent was indicted by a federal grand jury in the District of Columbia. He was charged with four counts, including the murder of a federal law enforcement officer, use of a firearm during a crime of violence, assault with intent to commit murder, and assault with a deadly weapon within a special maritime and territorial jurisdiction of the United States. [Docket No. 8, p. 2].

The events giving rise to the Indictment occurred on July 24, 1991. The Indictment alleged that on that day Respondent shot a police officer and an army sergeant and assaulted another officer with a .38 caliber revolver as they attempted to inform him that he would have to move from his dormitory room at the Walter Reed Army Medical Center. The Respondent had been permitted to live in the room pending the Army's decision to retire him for medical reasons. The shooting allegedly began when Respondent was told he could no longer stay in the room. At that point the army officer was shot at close range in the chest and the police officer was shot and killed. *Id.* at 2–3.

On February 9, 1993, a hearing on Respondent's competency to stand trial for the criminal charges was held before United States District Judge Royce C. Lamberth in the District of Columbia. Under 18 U.S.C. § 4241, the Court found by a preponderance of the evidence that Respondent was not then presently competent to assist in his own defense. Consequently, the Court found the Respondent incompetent to stand trial and ordered that Respondent be hospitalized for treatment of his delusional disorder. *Id.* at 3.

On June 29, 1993, the Respondent again came before Judge Lamberth for a hearing on his competency to stand trial. The Court, in reliance on a report from FMC–Rochester, determined that Respondent "remains incompetent to stand trial and that there is not a substantial probability that, in the foreseeable future, he will attain the capacity to permit trial to proceed." The Court ordered that Respondent be evaluated further, and if appropriate, that commitment proceedings be commenced pursuant to 18 U.S.C. § 4246. Respondent was subsequently returned to FMC–Rochester and, on August 30, 1993, a petition for commitment pursuant to 18 U.S.C. § 4246 was filed. *Id.* at 3–4.

On November 17, 1993, an evidentiary hearing was held at FMC–Rochester by Magistrate Judge Floyd E. Boline on the government's petition to commit Respondent to the custody of the Attorney General pursuant to 18 U.S.C. § 4246. At the hearing, Mary Alice Conroy, Ph.D., a staff psychologist and the Director of Forensics at FMC–Rochester, testified that Respondent is presently suffering from an unusual paranoid delusional disorder and that Respondent could seriously hurt someone if he were released. Dr. Conroy's opinion was based upon a complete evaluation of all available medical and mental health records, as well as her personal interviews and observations of Respondent. *Id.* at 1, 4–7.

In a Report and Recommendation issued on February 16, 1994, Magistrate Judge Boline found by clear and convincing evidence that Respondent suffers from a mental disease or defect and that his release would create a substantial risk of injury to another person or property. Consequently, Magistrate Judge Boline concluded that the government's petition should be granted and that the Respondent should be committed to the custody of the Attorney General pursuant to 18 U.S.C. § 4246(d). *Id.* at 6–8. After conducting a *de novo* review of Magistrate Judge Boline's findings, District Judge David S. Doty adopted Magistrate Judge Boline's Report and Recommendation in its entirety on March 8, 1994 and ordered that the Respondent be committed pursuant to 18 U.S.C. § 4246(d). [Docket No. 11]. No appeal was taken from Judge Doty's order.

On December 11, 1996, the Respondent filed with the Clerk of Court a Motion for Review of Commitment Order pursuant to 18

U.S.C. § 4247(h). The Respondent alleges that, in the three years since his commitment, he has exhibited no signs of dangerousness and should therefore be released from custody. In his Motion papers, the Respondent specifically moved the Court for a hearing to determine whether he should be discharged from FMC–Rochester based on his contention that he is no longer a danger to himself or the community. [Docket No. 13]. That hearing was held on March 4, 1997. The Petitioner opposes the Respondent's Motion for Review of Commitment Order, contending that the Respondent is still a danger to society.

## Applicable Law
### Commitment Procedure

Under federal law, a person who has been committed to the custody of the Attorney General pursuant to 18 U.S.C. § 4241(d) may be committed for hospitalization pursuant to 18 U.S.C. § 4246(d). If the requirements of 18 U.S.C. § 4246(d) are met, the hospitalized person will remain in the custody of the United States even though that person has never been convicted of a crime. That section, which requires the court to hold an evidentiary hearing, provides:

"if, after the hearing, the court finds by clear and convincing evidence that the person is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, the court shall commit the person to the custody of the Attorney General."

18 U.S.C. § 4246(d).

Proceedings under 18 U.S.C. § 4246 are commenced when the director of a facility in which a person is hospitalized files a certificate with the clerk of court certifying that a person who has been committed pursuant to 18 U.S.C. § 4241(d) "is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another." 18 U.S.C. § 4246(a). The clerk of court is required to send a copy of the certificate to the hospitalized person, and the court must hold a hearing to determine whether the person poses a "substantial risk" to society. The person whose mental condition is the subject of the hearing is entitled to counsel and is "afforded an opportunity to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses who appear at the hearing." 18 U.S.C. § 4247(d). In this case, the Respondent was originally committed for hospitalization on March 8, 1994 pursuant to the provisions of 18 U.S.C. § 4246(d). [Docket No. 11].

### Procedure for Release

A person committed for hospitalization pursuant to 18 U.S.C. § 4246(d) may later be either unconditionally or conditionally released upon the government's initiative. This process is initiated when the director of the facility in which the person is hospitalized determines that the hospitalized person has recovered from his mental disease or defect to such an extent that his release—either with or without conditions—would no longer create a substantial risk to society. When that determination is made, the director of the facility files a certificate to that effect with the clerk of court. 18 U.S.C. § 4246(e). The court must then order the discharge of the hospitalized person or hold a hearing, conducted pursuant to 18 U.S.C. § 4247(d), to determine whether the person should be released. *Id.*

A hospitalized individual may also be released upon the motion of the legal guardian or counsel for the hospitalized person. Thus, 18 U.S.C. § 4247(h) permits the hospitalized person's counsel or legal guardian to file a motion "at any time during such person's hospitalization" for "a hearing to determine whether the person should be discharged" from the facility at which the mentally ill person is being hospitalized. 18 U.S.C. § 4247(h). However, no such motion may be filed within 180 days of a court determination that the person should continue to be hospitalized. *Id.* In this case, the Respondent filed a Motion pursuant to 18 U.S.C. § 4247(h) seeking his release from the custody of the Attorney General.

After a hearing (whether held on motion of the government pursuant to section 4246(e) or on motion of the person hospitalized pursuant to section 4247(h)), if the Court finds by a preponderance of the evidence that the Respondent has recovered from his mental illness to such an extent that his unconditional release would no longer create a substantial risk to persons or property, the Court must order that the Respondent be immediately and unconditionally discharged. 18 U.S.C. § 4246(e)(1). If the Court finds by a preponderance of the evidence that the Respondent's "conditional release under a prescribed regimen of medical, psychiatric, or psychological care or treatment would no longer create a substantial risk of bodily injury to another person or serious damage to property of another," the Court must order that the Respondent be conditionally discharged under that prescribed treatment regimen. 18 U.S.C. § 4246(e)(2).

## DISCUSSION

The decision that Respondent be committed to the custody of the Attorney General was made on the basis of "clear and convincing evidence" that the Respondent is mentally ill and dangerous. *See* 18 U.S.C. § 4246(d). The issue that the Court must now decide is whether the Respondent "has recovered from his mental disease or defect to such an extent" that his unconditional or conditional release "would no longer create a substantial risk of bodily injury to another person or serious damage to property of another." 18 U.S.C. § 4246(e).

■ The relevant statutory provision, 18 U.S.C. § 4246(e), does not by express terms indicate which party bears the burden of proof to show recovery or non-recovery in a hearing held pursuant to that section. That statutory provision merely says that "[i]f, after the hearing, the court finds by a preponderance of the evidence that the person has recovered from his mental disease or defect" to such an extent that release or conditional release would no longer create a substantial risk to persons or property, then the Court must order the Respondent discharged from custody. 18 U.S.C. § 4246(e). The Court finds that the hospitalized person bears the burden of proof in a section 4246(e) proceeding to show that he has recovered from his mental illness and is no longer dangerous. This is particularly true where the Respondent himself initiates the proceedings pursuant to 18 U.S.C. § 4247(h). It is not to be expected that the government would have the burden of proving the negative of the claim of the hospitalized person that he or she is no longer dangerous.

■ A person is hospitalized under this statute only after it is proved by clear and convincing evidence that he or she suffers from a mental disease or defect, and that release would create a substantial risk of bodily injury to another person or serious damage to property of another. After commitment, release is permitted upon a lesser showing, by a preponderance of the evidence, that the person has recovered sufficiently that release would no longer create a substantial risk of danger to others. It would unbalance the implementation of the statutory standard of proof if the government were charged with the burden periodically of going forward with evidence further substantiating that the hospitalized person has not recovered, absent evidence presented by the hospitalized person. The statute speaks in terms of showing recovery, rather than asking the government to prove non-recovery. Only after the hospitalized person establishes a *prima facie* case that he or she has recovered to such an extent that he or she is no longer dangerous is the government required to introduce rebuttal evidence.

At the evidentiary hearing, the Respondent conceded that he still suffers from a mental disease or defect. Respondent failed to make a *prima facie* showing that he has recovered from his mental illness to such an extent that his release would no longer pose a substantial risk to persons or property. The Court therefore granted a directed verdict in the Petitioner's favor at the close of the Respondent's presentation of evidence. Consequently, the Petitioner was not required or permitted to present any evidence to show that the Respondent has not recovered from his mental illness, and that he remained a danger to society.

The first two witnesses called by the Respondent to testify at the hearing were inmate-companions who work at FMC–Rochester and know the Respondent. These two inmates, who serve as companions or friends of the mentally ill at FMC–Rochester, testified that they had never seen the Respondent act in an inappropriate or dangerous manner. The Respondent also offered the testimony of a prison staff member who worked with Respondent while Respondent was president of a prison veterans group. That staff member testified that he never saw the Respondent act inappropriately or get upset, although he stated that he had not seen the Respondent much in the last year.

Chaplain Bruce Fenner also testified on Respondent's behalf. Chaplain Fenner testified that the Respondent has been active in CHARIS, a Christian fellowship program, and has done volunteer work. He described the Respondent as a model inmate. On cross-examination, however, Chaplain Fenner testified that Respondent had recently told him that he had once made a "poor choice" by hitting another inmate with a broom.

Of course, none of these witnesses were able to state that they were aware of the conduct of Respondent at all times, and on all dates. None of the Respondent's witnesses indicated that they had reviewed the Respondent's central or medical files, nor that they were qualified to do so. None of the Respondent's witnesses was a medical doctor, a psychologist, a psychiatrist or qualified as an expert to offer an opinion as to whether the Respondent would pose a danger to the community if released. The Respondent himself did not testify at the hearing on the issue of whether or not he would be a danger to persons or property if released.

After hearing the Respondent's case-in-chief, the Court granted the Petitioner's directed verdict motion because the Respondent had failed to present evidence which would make a prima facie case to show that he has recovered from his mental illness to such an extent that his release or conditional release would no longer pose a danger to persons or property. When the Respondent was committed to the custody of the Attorney General in 1994, the finding was made by clear and convincing evidence, based on expert medical testimony, that Respondent suffers from a mental illness and that his release would pose a danger to society.

Respondent failed to introduce any medical evidence whatsoever to show that he has recovered from his mental illness to such an extent that his release would no longer pose a danger to society. He also failed to show that he could be safely discharged under some "prescribed regimen of medical, psychiatric, or psychological care or treatment that has been prepared for him." Accordingly, the Respondent's Motion for Review of Commitment Order should be denied. 18 U.S.C. § 4246(e)(1)-(2); *see also United States v. Woods,* 995 F.2d 894, 896 (9th Cir.1993) (18 U.S.C. § 4246(e)(2)(A) "clearly envisions that a medical expert will be consulted or retained" to approve and administer a treatment regimen that is part of a conditional release plan).

### *RECOMMENDATION*

For the foregoing reasons,

IT IS HEREBY RECOMMENDED THAT:

1. The Respondent's Motion for Review of Commitment Order pursuant to 18 U.S.C. § 4247(h) [Docket No. 13] be denied; and

2. The Respondent remain in the custody of the United States Attorney General.

March 10, 1997.

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties by March 25, 1997, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file

835

a complete transcript of the hearing by March 25, 1997.