# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

———————————

No. 99-3397

———————————

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of Minnesota |
| HOWARD MCALLISTER, | * | |
| | * | [PUBLISH] |
| Appellant. | * | |

———————————

Submitted: June 12, 2000
Filed: September 18, 2000

———————————

Before HANSEN and HEANEY, Circuit Judges, and MILLS,[1] District Judge.

———————————

MILLS, District Judge:

This appeal raises a matter of first impression.

Does 18 U.S.C. § 4246(e) require a district court to conduct a hearing prior to conditionally releasing an individual who has been committed to the custody of the Attorney General of the United States pursuant to 18 U.S.C. § 4246(d)?

We find that § 4246(e) does not require a hearing.

---

[1]The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

We also find that the conditions imposed upon Appellant as part of his release do not violate his constitutional or statutory rights.

Therefore, we affirm.

# I. BACKGROUND

Howard McAllister served in the United States Army for 27 years, attaining the rank of Sergeant Major before being retired in June 1991on a full medical disability based upon his psychiatric condition.[2]

On July 24, 1991, McAllister allegedly shot a Department of Defense police officer and an Army sergeant. Evidently, the Army had permitted McAllister to stay in a dormitory room at the Walter Reed Army Medical Center in Washington, D.C., pending its decision to retire him for medical reasons. When the police officer and the Army sergeant informed McAllister that he could no longer stay in the room at Walter Reed, he allegedly shot the Army sergeant in the chest and fatally shot the police officer.

On August 16, 1991, a federal grand jury sitting in Washington, D.C., returned a four count indictment against McAllister for the events which had occurred at Walter Reed.

On February 9, 1993, United States District Judge Royce C. Lamberth of the District of Columbia conducted a competency hearing in McAllister's criminal case. At the conclusion of the hearing, Judge Lamberth found by a preponderance of the evidence that McAllister was incompetent to stand trial because he was incapable of assisting in his own defense. Accordingly, Judge Lamberth ordered McAllister to be

---

[2]McAllister has been diagnosed as suffering from a delusional disorder, paranoid type.

hospitalized for treatment of his delusional disorder. McAllister was then placed in the Federal Medical Center at Rochester, Minnesota ("FMC–Rochester").

On June 29, 1993, Judge Lamberth conducted a second competency hearing. At this second hearing, Judge Lamberth again found McAllister incompetent to stand trial. In making this determination, Judge Lamberth relied upon a report from FMC–Rochester's clinicians which indicated that McAllister "remain[ed] incompetent to stand trial and that there is not a substantial probability that, in the foreseeable future, he will attain the capacity to permit trial to proceed." Accordingly, Judge Lamberth ordered McAllister to undergo further evaluations and, if appropriate, that commitment proceedings be commenced against him pursuant to 18 U.S.C. § 4246(d).

On August 30, 1993, the Government filed a petition for commitment pursuant to 18 U.S.C. § 4246(d). United States District Judge David S. Doty of the District of Minnesota referred the petition to United States Magistrate Judge Floyd E. Boline who conducted an evidentiary hearing on November 17, 1993. At the hearing, staff psychologist and director of forensics at FMC–Rochester Mary Alice Conroy, Ph.D., testified that McAllister was still suffering from an unusual paranoid delusional disorder and that he could seriously hurt someone if he were to be released. On February 16, 1994, Magistrate Judge Boline found by clear and convincing evidence that McAllister suffered from a mental disorder or defect and that his release from confinement would create a substantial risk of injury to another person or property. Accordingly, Magistrate Judge Boline recommended that the Government's petition for commitment be granted and that McAllister be committed to the custody of the Attorney General of the United States. After conducting a de novo review, Judge Doty adopted Magistrate Judge Boline's report and recommendation in toto and ordered that McAllister be committed to the Attorney General's custody pursuant to 18 U.S.C. § 4246(d).

On December 11, 1996, McAllister filed a motion with Judge Doty asking him to review, pursuant to 18 U.S.C. § 4247(h), his commitment order. In the motion,

McAllister argued that, in the three years in which he had been at FMC–Rochester, he had shown no signs of being dangerous, and thus, he should be released from custody. Judge Doty referred the motion to United States Magistrate Judge John M. Mason who, after conducting an evidentiary hearing, found that McAllister had not established by a preponderance of the evidence that "he ha[d] recovered from his mental illness to such an extent that his release would no longer pose a danger to society." United States v. McAllister, 963 F. Supp. 829, 834 (D. Minn. 1997). Thereafter, Judge Doty adopted Magistrate Judge Mason's report and recommendation and denied McAllister's motion for review of his commitment order. Id. at 830.

On January 29, 1999, the warden at FMC–Rochester notified Judge Doty via a letter that, although McAllister continued to suffer from a major mental illness, FMC–Rochester's medical staff had concluded that McAllister could be conditionally released subject to a structured regimen of care. Specifically, the clinicians suggested that McAllister be moved to a residential care setting, initially on an in-patient basis and gradually be moved to an out-patient basis. The warden also informed Judge Doty that the South Carolina Department of Mental Health had agreed to accept McAllister for a 30-day psychiatric assessment with the intention of accepting him on a conditional release if the assessment indicated the potential for successful treatment. Accordingly, the warden recommended to Judge Doty that McAllister be released, subject to certain conditions, pursuant to 18 U.S.C. § 4246(e).

On June 2, 1999, Judge Doty entered an order, without conducting a hearing, releasing McAllister from his § 4246(d) commitment subject to the conditions suggested by FMC–Rochester's clinicians. On June 11, 1999, McAllister's counsel filed a motion to modify two of the conditions imposed upon him by Judge Doty's June 2, 1999 order. Specifically, McAllister objected to condition number three which required him to take psychotropic medication if ordered to do so by the clinicians at the South Carolina in-patient or the out-patient mental health facility, and he objected to condition number five which mandated his return to in-patient status at a facility

4

designated by the South Carolina Department of Mental Health if, at any time while on out-patient status, his treating clinicians deemed his return to in-patient status necessary. McAllister argued that condition number three had previously been decided in his favor (i.e., FMC-Rochester could not force him to take psychotropic medication, see United States v. McAllister, 969 F. Supp. 1200 (D. Minn. 1997)), and therefore, the condition should be modified. Moreover, McAllister contended that condition number five should be modified to require a hearing before a district judge before he could be required to return to in-patient status.

On June 25, 1999, Judge Doty denied McAllister's motion to modify the conditions of his release. Therein, Judge Doty explained that his June 2, 1999 order did not address medical treatment options within a federal institution; rather, it constituted a plan to conditionally release him in incremental stages. In addition, Judge Doty declined to limit the treating options available to the South Carolina Department of Mental Health due to the important issues of public safety which were involved.

McAllister has now filed the instant appeal raising two issues to this Court. The first issue raised by McAllister is whether Judge Doty erred in conditionally releasing him pursuant to 18 U.S.C. § 4246(e)(2) without first conducting a hearing. The second issue raised by McAllister is whether condition number five in Judge Doty's June 2, 1999 order violates his constitutional and statutory rights in that the condition requires his return to in-patient status upon the sole determination of his treating clinicians without being subject to any judicial review.

## II. ANALYSIS

A.    HEARING

We review a district court's statutory interpretation de novo. United States v. Vig, 167 F.3d 443, 447 (8th Cir. 1999). "Our objective in interpreting a federal statute is to give effect to the intent of Congress. . . . [A]bsent clearly expressed legislative intention to the contrary, the language is regarded as conclusive." Id. Thus,

> [o]ur starting point in interpreting a statute is always the language of the statute itself. If the plain language of the statute is unambiguous, that language is conclusive absent clear legislative intent to the contrary. Therefore, if the intent of Congress can be clearly discerned from the statute's language, the judicial inquiry must end. If, on the other hand, the language of a statute is ambiguous, we should consider "the purpose, the subject matter and the condition of affairs which led to its enactment." When the meaning of a statute is questionable, it should be given a sensible construction and construed to effectuate the underlying purposes of the law.

United States v. S.A., 129 F.3d 995, 998 (8th Cir. 1997)(internal citations omitted).

The statute at issue in the instant case is 18 U.S.C. § 4246(e) which provides:

> When the director of the facility in which a person is hospitalized pursuant to subsection (d) determines that the person has recovered from his mental disease or defect to such an extent that his release would no longer create a substantial risk of bodily injury to another person or serious damage to property of another, he shall promptly file a certificate to that effect with the clerk of the court that ordered the commitment. The clerk shall send a copy of the certificate to the person's counsel and to the attorney for the Government. The court shall order the discharge of the person or, on the motion of the attorney for the Government or on its own motion, shall hold a hearing, conducted pursuant to the provisions of section 4247(d), to determine whether he should be released. If, after the hearing, the court finds by a preponderance of the evidence that the person has recovered from his mental disease or defect to such an extent that–

6

(1) his release would no longer create a substantial risk of bodily injury to another person or serious damage to property of another, the court shall order that he be immediately discharged; or

(2) his conditional release under a prescribed regimen of medical, psychiatric, or psychological care or treatment would no longer create a substantial risk of bodily injury to another person or serious damage to property of another, the court shall–

> (A) order that he be conditionally discharged under a prescribed regimen of medical, psychiatric, or psychological care or treatment that has been prepared for him, that has been certified to the court as appropriate by the director of the facility in which he is committed, and that has been found by the court to be appropriate; and

> (B) order, as an explicit condition of release, that he comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment.

The court at any time may, after a hearing employing the same criteria, modify or eliminate the regimen of medical, psychiatric, or psychological care or treatment.

Id.

McAllister argues that, although 18 U.S.C. § 4246(e) does not require the district court to conduct a hearing if a person who has been committed pursuant to 18 U.S.C. § 4246(d) is to be released outright, the statute does mandate a hearing if the person is to be conditionally released. Because he did not receive a hearing before being conditionally released, McAllister claims that Judge Doty's June 2, 1999 order must be vacated and that this case must be remanded for a hearing. Likewise, McAllister contends that, although a person may waive his right to a hearing under the statute, due to the person's incompetence, the waiver may only be considered valid when

7

accompanied by the advice and assistance of counsel. Because Judge Doty conditionally released him before he obtained the assistance of counsel, McAllister asserts that he cannot be considered to have waived his right to a hearing.[3]

We disagree. Under the plain, unambiguous language of § 4246(e), it is clear that Congress did not intend to require that a hearing be conducted by the district court prior to releasing an individual who has been committed pursuant to § 4246(d), regardless of whether the release is with or without conditions. Section 4246(e) gives the district judge a choice: he may either discharge the committed person, or he may conduct a hearing to determine whether the committed person should be released. Id. When Congress referred to a hearing (i.e., "shall hold a hearing" and "[i]f after a hearing"), it was referring to those instances in which the district court decides to conduct a hearing. Congress was not, however, mandating that a hearing be held as evidenced by the statute's alternative language authorizing the district judge to discharge a person or conduct a hearing to determine if a discharge would be appropriate.

Moreover, the statute does not differentiate between being released with or without conditions. On the contrary, even if the district court decides to conduct a hearing, the purpose of the hearing is to determine whether the committed person should be released. As for imposing conditions as part of a release, the statute bestows the task of formulating those conditions upon the Bureau of Prison's psychiatrist; these conditions must then be approved by the director of the facility to which the person has been committed and by the district court. In our opinion, § 4246(e)(2)(A) is clear: if

---

[3]Pursuant to United States v. LaFromboise, 836 F.2d 1149, 1151 (8th Cir. 1988), McAllister is not continuously represented by counsel. It was only after McAllister and his family notified the Federal Public Defender's Office for the District of Minnesota of Judge Doty's June 2, 1999 order that his present counsel became involved in this matter.

8

a district judge decides that a committed person may be conditionally released because he no longer poses a substantial risk to another person or property, the district judge should order his discharge conditioned upon a regimen of treatment which has been certified as being appropriate by the director or warden of the facility in which he has been committed and of which the district judge approves.

Judge Doty chose not to conduct a hearing prior to releasing McAllister as was his prerogative under 18 U.S.C. § 4246(e). Judge Doty also chose to conditionally release McAllister based upon a regimen of care which had been prepared and certified by the warden of FMC-Rochester and of which he approved pursuant to § 4246(e)(2)(A). Accordingly, we find no error in Judge Doty's failure to conduct a hearing prior to entering his June 2, 1999 order.[4]

## B.    CONDITION NUMBER FIVE

McAllister also challenges the constitutionality of condition number five contained within Judge Doty's June 2, 1999 order which provides: "While on out-patient status, should it at any time be deemed necessary by treating clinicians, he may be returned to in-patient status at a facility designated by the South Carolina Department of Mental Health." McAllister argues that this condition is contrary to fundamental notions of due process and fairness as well as federal and South Carolina statutory procedures developed for the treatment of the mentally ill. Specifically, McAllister contends that, unless he receives notice, counsel, and a hearing before being returned to in-patient status, he would be deprived of his liberty interest in remaining on out-patient status, i.e., his right not to be re-institutionalized without receiving due process.

---

[4]Because we have found that Congress' intent can be discerned from the statute's plain language, our inquiry on this issue is at an end. S.A., 129 F.3d at 998.

9

Furthermore, McAllister asserts that his consent to the imposed conditions–including condition number five–was invalid. McAllister claims that because he has been found incompetent, his consent to the imposed conditions can only be considered valid if accompanied by the assistance of counsel. Because he did not have the assistance of counsel when he consented to the conditions, McAllister contends that his consent was invalid. Finally, McAllister argues that his claim is ripe for adjudication, analogizing his conditional release to the conditions imposed by a district court when sentencing a criminal defendant to a term of supervised release. In fact, McAllister claims that had he not raised his objection when he did, he would have waived his objection to the conditions of his release. Therefore, McAllister asks us to vacate Judge Doty's June 2, 1999 order and to remand this case with instructions to modify the conditions of his release.

Again, we disagree with McAllister's interpretation of 18 U.S.C. § 4246(e). Initially, we note that, contrary to his assertions, McAllister's consent to the conditions imposed upon him in Judge Doty's June 2, 1999 order was valid, despite his incompetence to stand trial and despite being made without the assistance of counsel. "Mentally ill patients, though incapacitated for particular purposes, can be competent to make decisions concerning their medical care . . . ." United States v. Charters, 829 F.2d 479, 488 (4th Cir. 1987); see Davis v. Hubbard, 506 F. Supp. 915, 935 (N.D. Ohio 1980)(holding that "there is no necessary relationship between mental illness and incompetency which renders [the mentally ill] unable to provide informed consent to medical treatment."). McAllister has previously demonstrated his ability to withhold his consent to medical treatment. McAllister, 969 F. Supp. at 1203. In fact, McAllister prevailed in his refusal to be forcibly and involuntary medicated with psychotropic drugs. Id. at 1215. Therefore, we find no reason to conclude that McAllister lacked the capacity sans the advice of counsel to consent to the regimen recommended by FMC-Rochester's warden and clinicians and adopted by Judge Doty in his June 2, 1999

10

order.[5]

The issue then becomes whether McAllister's challenge to condition number five is meritorious despite his having previously consented to the imposition of that condition. We find that it is not.

To the extent that McAllister is challenging the condition based upon constitutional and statutory grounds, we find that his claim is not ripe for adjudication because a justiciable case or controversy does not yet exist. It is undisputed that "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Addington v. Texas, 441 U.S. 418, 425 (1979)(citing cases). However, the existence of this liberty interest does not nullify Article III's case or controversy requirement. As we have previously explained,

> [i]n order to establish that a claim is ripe for judicial review, a plaintiff must meet two requirements. First, it must demonstrate a sufficiently concrete case or controversy within the meaning of Article III of the Constitution. *Bob's Home Service, Inc. v. Warren County*, 755 F.2d 625, 627 (8th Cir. 1985). Second, prudential considerations must justify the present exercise of judicial power.

Christopher Lake Dev. Co. v. St. Louis County, 35 F.3d 1269, 1272-73 (8th Cir. 1994). "The basic inquiry is whether the 'conflicting contentions of the parties . . . present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract.' " Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979), quoting Railway Mail Ass'n v. Corsi, 326 U.S.

---

[5]McAllister did not challenge, either in the district court or before us, FMC-Rochester's warden's assertion that he consented to the conditions contained in Judge Doty's June 2, 1999 order. Accordingly, we assume that McAllister actually gave his consent to the conditions at issue.

11

88, 93 (1945); see Vorbeck v. Schnicker, 660 F.2d 1260, 1266 (8th Cir. 1981)(noting that only "a definite and concrete controversy" satisfies the requirements of Article III).

At oral argument, McAllister's counsel informed us that McAllister was currently on in-patient status in South Carolina and that he had not, as of yet, been released to out-patient status. It may very well be that McAllister never achieves out-patient status; then again, he may achieve out-patient status, but his treating clinicians may never deem it necessary for him to return to in-patient status. Because the condition of which McAllister complains may never have a bearing upon his release, we believe that his claim is too speculative to constitute a definite and concrete controversy which satisfies Article III's requirements. Therefore, until such time as McAllister is placed upon out-patient status and until his treating clinicians seek to return him involuntarily to in-patient status, we do not believe that McAllister's claim is justiciable because he has not suffered an injury in fact. See Johnson v. Missouri, 142 F.3d 1087, 1090 n. 4 (8th Cir. 1998), quoting Warth v. Seldin, 422 U.S. 490, 499 n. 10 (1975)(noting that although "standing and ripeness are technically different doctrines, they are closely related in that each focuses on 'whether the harm asserted has matured sufficiently to warrant judicial intervention.'").

Moreover, we are not convinced by McAllister's analogy to the conditions imposed by a district court when sentencing a criminal defendant to a term of supervised release. As the United States Supreme Court explained, persons subject to commitment proceedings do not enjoy the same degree of rights attendant to a criminal proceeding. Jones v. United States, 463 U.S. 354, 367-68 (1983). Accordingly, we find that McAllister's constitutional challenge to condition number five of Judge Doty's June 2, 1999 order is not ripe for review.

To the extent that McAllister is challenging Judge Doty's refusal to modify the conditions imposed upon him, we cannot say that Judge Doty abused his discretion in refusing to do so. The last paragraph of 18 U.S.C. § 4246(e) allows a district court to

12

modify the regimen of care imposed upon an individual who has been conditionally released. In analyzing this language, the statute must "be read as a whole, since the meaning of statutory language, plain or not, depends on context." King v. St. Vincent's Hosp., 502 U.S. 215, 221 (1991). As we explained supra, subsection 4246(e) authorizes only the Government or the district court to have a hearing to determine whether a committed person should be released pursuant to that subsection. It would stand to reason, then, that only the Government or the district court may request the hearing referred to in the last paragraph of § 4246(e) which is required before a conditionally released individual's regimen of care may be modified. Therefore, McAllister may not be heard to complain about Judge Doty's failure to conduct a hearing prior to denying his request for a modifications of the conditions of his release.

Furthermore, we cannot say that Judge Doty abused his discretion in imposing the condition because condition number five merely grants McAllister's treating clinicians the authority to return him to in-patient status in order to protect the public's safety or in the event that he is having difficulty assimilating into society while on out-patient status. The warden's and FMC-Rochester's clinicians' recommendation to Judge Doty was that McAllister be released "gradually" to out-patient status. Inherent in this recommendation was the fact that McAllister may incur set-backs along his way which might include a return to in-patient status. We believe that Judge Doty's June 2, 1999 order justifiably encompasses just such a situation without infringing upon McAllister's constitutional or statutory rights. See Youngberg v. Romeo, 457 U.S. 307, 323 (1982)(holding that deference to the judgments of the professionals charged with caring for committed persons must be given: "the decision, if made by a professional, is presumptively valid.").

Our holding today does not leave McAllister without any judicial protections whatsoever. Rather, our interpretation of the condition envisions a voluntary return by McAllister to in-patient status, upon request by his treating clinicians, with an eye toward returning to out-patient status once the problem, issue, etc., noted by his treating

13

clinicians has been corrected. We agree with Judge Doty that this fluidity of transfer is necessary to bestow upon McAllister's treating clinicians the utmost leeway in treating his mental illness and monitoring his progress.

On the other hand, if McAllister refuses to return to inpatient status, his conditional discharge will be revoked, and he will be entitled to a hearing pursuant to 18 U.S.C. § 4246(f). In addition, McAllister will be able to file a writ of habeas corpus challenging the legality of his detention. 18 U.S.C. § 4247(g). Finally, McAllister will also be entitled to a hearing pursuant to South Carolina law. S.C. CODE ANN. § 44-17-580. Accordingly, we cannot say that Judge Doty abused his discretion in imposing condition number five upon McAllister's release.

## III. CONCLUSION

For the reasons given above, the judgment of the district court is AFFIRMED.

A true copy.

Attest:


CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

14