# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1035

_____

United States of America,

        Appellee,

v.

Steven Curtis McIntosh,

        Appellant.

Appeal from the United States
District Court for the
Southern District of Iowa.

_____

Submitted: September 12, 2000
Filed: January 10, 2001

_____

Before HANSEN, HEANEY, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

HANSEN, Circuit Judge.

Steven Curtis McIntosh pleaded guilty to a charge that he conspired to manufacture methamphetamine, in violation of 21 U.S.C. § 846 (1994). On December 20, 1999, the district court[1] sentenced McIntosh to twenty years in prison. McIntosh appeals his sentence, and we affirm.

_____

[1]The Honorable Ronald E. Longstaff, Chief Judge, United States District Court for the Southern District of Iowa.

## I.

A grand jury returned a seven-count, superceding indictment against McIntosh, Lenora ("Jean") Cresswell, John McMillan, and Amy Cresswell. The charges stemmed from an investigation that ensued after the September 12, 1998, death of Jessica Smith, Jean's 14-year-old daughter. Jessica's death resulted from a methamphetamine overdose.

The facts underlying the indictment are truly tragic. In June or July 1998, Jean, her 12-year-old son, and Jessica moved in with McIntosh. Jean initially agreed that she would take care of McIntosh's home if he would supply her with methamphetamine; the two later became romantically involved. McIntosh was privy to a methamphetamine supply because he and McMillan had been manufacturing the drug together since February 1998. McMillan and McIntosh split the manufactured methamphetamine evenly, and after Jean moved in, McIntosh provided the drug to her out of his half. The three shared their methamphetamine with others, including Amy Cresswell, Jean's 21-year-old niece. Amy often used methamphetamine with Jean, but she was also close to Jessica and spent a considerable amount of time with her. Jean and Amy frequently provided methamphetamine to Jessica, as did McMillan on a few occasions. McIntosh was unaware that the three were giving methamphetamine to Jessica. He, in fact, made it known that Jessica was not to be involved with methamphetamine nor was she to know that he and McMillan were manufacturing the drug.

On the afternoon of September 12, 1998, Amy and Jessica ingested methamphetamine together. Amy had been given a coffee filter, previously used in the manufacturing process, that contained residue methamphetamine. She and Jessica soaked the filter in a glass of Diet Coke and then split the concoction between them. Jessica later became unresponsive as McMillan, Amy, and Jessica were driving in a car. McMillan and Amy took Jessica to McMillan's home and later to the hospital where she died early the next morning. A search of McIntosh's home was executed

2

later in the day. Officers conducting the search located items necessary to manufacture methamphetamine and further investigation ensued, resulting in the charges filed in the superceding indictment.

Pursuant to a plea agreement, McIntosh pleaded guilty to a charge that he conspired with Jean and McMillan to manufacture methamphetamine. McIntosh stipulated in his plea agreement that he was responsible for at least 500 grams of a mixture or substance containing methamphetamine, subjecting him to the penalties for manufacturing a controlled substance identified in 21 U.S.C. § 841(b)(1)(A) (1994 & Supp. IV 1998). See 21 U.S.C. § 846 (providing that a conspirator is subject to the penalties proscribed for the substantive offense underlying the conspiracy). Section 841(b)(1)(A)(viii) requires a "term of imprisonment which may not be less than 10 years or more than life and if death or serious bodily injury results from the use of such substance shall not be less than 20 years or more than life." The plea agreement left open for the district court's determination at sentencing whether McIntosh was subject to an enhanced sentence because of Jessica's death. (Plea Agreement, R. at 19, ¶ 10.)

The district court held a sentencing hearing on December 20, 1999, at which time the government offered evidence to show the enhancement to the mandatory minimum sentence was required pursuant to § 841(b)(1)(A). After hearing the evidence, the district court made three factual findings essential to the issue: 1) Jessica's death resulted from the use of methamphetamine; 2) the methamphetamine used by Jessica on September 12, 1998, came from either Amy Cresswell, Jean Cresswell, or McMillan;[2] and 3) regardless of which of the three supplied the methamphetamine, it "originally came" from McIntosh. The district court further found that the government

_____

[2]Amy testified that McIntosh gave her the filter containing the methamphetamine residue that she and Jessica used in the Diet Coke but that she had also received filters from Jean and McMillan in the past. Amy also testified that Jessica may have used, unbeknownst to her, methamphetamine from a stash kept in Amy's home on the same day the two ingested the methamphetamine from the filter.

failed to prove that McIntosh directly furnished Jessica with methamphetamine nor that he had any knowledge she was being supplied with the drug by the others. Despite the fact that he did not supply the drug directly to Jessica, the district court concluded McIntosh was subject to the enhancement because he played a part in manufacturing the drug she did use. The district court sentenced McIntosh to the statutory 20-year minimum sentence.[3]

## II.

McIntosh challenges his sentence on two grounds. He first contends the district court erroneously enhanced his sentence based on Jessica's death. On appeal, McIntosh asks that we interpret § 841(b)(1)(A) to permit imposition of the twenty-year mandatory minimum sentence only if a district court finds that death or serious bodily injury was a reasonably foreseeable result of, or was proximately caused by, a defendant's conduct. He argues the government failed to prove that Jessica's death was reasonably foreseeable, and therefore, the district court should not have enhanced his sentence.[4] McIntosh also contends his sentence was imposed in violation of the

___

[3]The court arrived at a Sentencing Guidelines range of 240 to 262 months, based on a total offense level 37 and a criminal history category I. Although the sentencing range is 210 to 262 months at the relevant sentencing table intersection, the court determined that U.S.S.G. § 5G1.1(c)(2) imposed a 240-month floor on McIntosh's range because of the applicable 20-year (240-month) statutory minimum sentence. The court computed the total offense level based on a base offense level 38 (required under U.S.S.G. § 2D1.1(a)(2) when death results from use of a controlled substance), increased 2 levels because Jessica was a vulnerable victim, less 3 levels for McIntosh's acceptance of responsibility. The enhancement language of U.S.S.G. § 2D1.1(a)(2) mirrors § 841(b)(1)(A)'s language.

[4]McIntosh urges us to interpret U.S.S.G. § 2D1.1(a) similarly. Although the Guideline provision has little relevance under the circumstances--the district court determined a guideline range but imposed the 20-year minimum statutory sentence--we fail to see how the provision could be interpreted differently than the statute; the

constitutional protections recently recognized by the Supreme Court in Apprendi v. New Jersey, 120 S. Ct. 2348 (2000).

A.

McIntosh's first argument presents us with a matter of statutory interpretation: whether § 841(b)(1)(A)'s language, read in this case in conjunction with § 846, requires a district court to find that death or serious bodily injury was reasonably foreseeable to a defendant before imposing the statutory enhancement. The starting point for ascertaining the intended meaning of any statute is the language of the statute itself. See United States v. McAllister, 225 F.3d 982, 986 (8th Cir. 2000) (quoting United States v. S.A., 129 F.3d 995, 998 (8th Cir. 1997)). If the language is unambiguous, the statute should be enforced as written unless there is clear legislative intent to the contrary. See id. "Courts are obligated to refrain from embellishing statutes by inserting language that Congress has opted to omit." Root v. New Liberty Hosp. Dist., 209 F.3d 1068, 1070 (8th Cir. 2000). In its review of the statutory language, the district court concluded that foreseeability was irrelevant to the enhancement inquiry and that its factual findings warranted an enhancement under § 841(b)(1)(A). We review the conclusions de novo. See United States v. Brummels, 15 F.3d 769, 771 (8th Cir. 1994) ("As to application of facts to the legal interpretation of [a criminal statute], the standard of review is de novo.").

We begin our analysis with the language of § 841(b)(1)(A)--the applicable penalty provision because McIntosh admitted responsibility for more than 500 grams of methamphetamine mixture. Under § 841(b)(1)(A), a "person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life and if death or serious bodily injury results from the use of such substance shall be not less than 20 years or more than life." We hold that this language is unambiguous and that

language is identical.

5

giving effect to its plain meaning prohibits us from superimposing upon the statute a foreseeability or proximate cause requirement. From the statute's language, it is clear Congress intended to expose a defendant to a more severe minimum sentence <u>whenever</u> death or serious injury is a consequence of the victim's use of a controlled substance that has been manufactured or distributed by that defendant. We decline to hinder Congress's will, apparent from the face of the statute, through a judicial pronouncement that the statute requires more than it says. <u>See</u> <u>Burlington N., Santa Fe Ry. Co. v. Lohman</u>, 193 F.3d 984, 985 (8th Cir. 1999) (recognizing that rules of statutory construction prohibit courts from supplying words that "would defeat the purpose of the statute"), <u>cert. denied</u>, 120 S. Ct. 1832 (2000).

Our reading of § 841(b)(1)(A) is consistent with decisions of both the Third and Fourth Circuits. The Fourth Circuit was the first to address the statutory enhancement for death or serious bodily injury. <u>See</u> <u>United States v. Patterson</u>, 38 F.3d 139 (4th Cir. 1994), <u>cert. denied</u>, 514 U.S. 1113 (1995). It, too, agreed that Congress's intent is clear from the plain language of the statute.

> Quite simply, the plain language of [the statute] does not require, nor does it indicate, that prior to applying the enhanced sentence, the district court must find that death resulting from the use of a drug distributed by a defendant was a reasonably foreseeable event. . . . [Instead,] [t]he statute puts drug dealers and users on clear notice that their sentences will be enhanced if people die from using the drugs they distribute. . . . Where serious bodily injury or death results from the distribution of certain drugs, Congress has elected to enhance a defendant's sentence regardless of whether the defendant knew or should have known that death would result. We will not second-guess this unequivocal choice.

<u>Id.</u> at 145 (footnote omitted). The Third Circuit followed <u>Patterson</u>, concluding that "Congress recognized that the risk is inherent in [a controlled substance] and thus it provided that persons who distribute it do so at their peril." <u>United States v. Robinson</u>, 167 F.3d 824, 831 (3d Cir. 1999); <u>see also</u> <u>United States v. Rebmann</u>, 226 F.3d 521,

6

525 (6th Cir. 2000) ("On its face, the statute is, in effect, a strict liability statute with respect to the injury or death of another arising out of the distribution of drugs. It is, of course, within the power of Congress to create a strict liability crime in some situations." (in dictum)).[5] We agree with these courts' recognition that Congress intended § 841(b)(1)(A)'s enhancement to apply without regard to the principles of proximate cause or the foreseeability of death or serious bodily injury.

The enhancement inquiry is not altered merely because McIntosh pleaded guilty to conspiracy to manufacture methamphetamine (rather than to a substantive violation of § 841 itself) nor because Jessica obtained the drug directly from someone other than McIntosh. Section 846 provides that a defendant convicted of conspiracy "shall be subject to the same penalties as those prescribed for the [underlying] offense." In this case, the district court found that McIntosh played a direct part in manufacturing the drug ingested by Jessica.[6] The underlying offense holds those who manufacture a drug strictly liable when death results from the manufactured drug. Accordingly, the district court was not required to find that Jessica's death was reasonably foreseeable to

---

[5]Robinson, Patterson, and Rebmann all addressed enhancements for death or serious injury under § 841(b)(1)(C). The language in § 841(b)(1)(A) is identical.

[6]McIntosh challenges the district court's finding that he is responsible for the drug that resulted in Jessica's death. He asserts that he and McMillan had a falling-out in August 1998 (a month before Jessica's death) and ceased manufacturing methamphetamine together. He further asserts that McMillan "completed" the manufacturing process of the drug used by Jessica after the falling-out. In making its ruling, the district court accepted McIntosh's version of the facts, but found the drug was still attributable to him because he prepared, or helped prepare, the methamphetamine up to the point at which McMillan could complete it. There was also evidence presented that McMillan split the final batch with McIntosh after it was complete and that the manufacturing equipment belonged to the both of them. Based on this evidence, we conclude the district court's factual finding is supported by the record and did not amount to clear error. See United States v. Robinson, 217 F.3d 560, 565 (8th Cir.) (standard of review), cert. denied, 2000 WL 1529053 (Nov. 13, 2000).

7

McIntosh before enhancing his sentence. In sum, when a conspiracy defendant plays a direct role in manufacturing or distributing a drug that results in death, Congress's intent under § 846 is clear that the defendant is strictly liable under § 841(b)(1)(A)'s enhancement scheme.

We are not faced in this case with a situation in which the government seeks to vicariously enhance a defendant's sentence based solely on the actions of a coconspirator or coconspirators, i.e., where a defendant has played no part in the underlying offense conduct to which the death or serious bodily injury can be attributed. The Sixth Circuit recently faced such a situation in United States v. Swiney, 203 F.3d 397 (6th Cir.), cert. denied, 120 S. Ct. 2678 (2000), a decision McIntosh urges us to adopt. In Swiney, the government appealed the sentences of nine defendants convicted of conspiracy to distribute heroin. It argued that under the Pinkerton doctrine, all were subject to the statutory enhancement because an individual died from an overdose of heroin purchased from a nondefendant member of the conspiracy.[7] See id. at 399. The Swiney court rejected the argument as contrary to the Sentencing Guidelines treatment of conspiracy, U.S.S.G. § 1B1.3(a)(1)(B) specifically.[8]

---

[7]Under the Pinkerton doctrine, "each member of a conspiracy may be held criminally liable for any substantive crime committed by a co-conspirator in the course and furtherance of the conspiracy, even though those members did not participate in or agree to the specific criminal act." United States v. Golter, 880 F.2d 91, 93 (8th Cir. 1989) (citing Pinkerton v. United States, 328 U.S. 640 (1946)).

[8]U.S.S.G. § 1B1.3(a)(1) identifies relevant conduct for which a defendant may be sentenced:

    (B)    in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity.

See id. at 402. The court reasoned that U.S.S.G. § 1B1.3(a)(1)(B) prohibits consideration of a coconspirator's actions in sentencing a defendant unless the coconspirator's actions were in furtherance of the conspiracy and were reasonably foreseeable by the defendant. See id. at 403 (quoting United States v. Lanni, 970 F.2d 1092, 1093 (2d Cir. 1992)). Relying on numerous circuit decisions that apply U.S.S.G. § 1B1.3(a)(1)(B) for purposes of determining whether drugs distributed by a coconspirator are attributable to a defendant under § 841(b)'s quantity-dependent sentencing scheme, see, e.g., United States v. Jones, 965 F.2d 1507, 1517 (8th Cir.), cert. denied, 506 U.S. 924 (1992), the court remanded the case to the district court to conduct the Guidelines' foreseeability analysis to ascertain whether the nine defendants were subject to the enhancement. See id. at 405-06.

We find Swiney's reasoning applicable only in those cases in which a conspiracy defendant played no direct part in manufacturing the drug or in immediately distributing the drug that caused the death or serious bodily injury. If the government seeks to enhance a conspiracy defendant's sentence, as it did in Swiney, based solely on conduct of a coconspirator, a foreseeability analysis may be required in determining whether Congress intended, under § 846, that the defendant be held accountable for the conduct of a coconspirator. See United States v. Martinez, 987 F.2d 920, 924 (2d Cir. 1993) ("Section 846 does not subject the defendant to liability for any crimes committed by any other members of the conspiracy, regardless of the defendant's knowledge about those crimes. To allow [such an] interpretation would be to expand dangerously the scope of conspiratorial culpability."); cf. Jones, 965 F.2d at 1517 (holding that a conspiracy defendant may only be sentenced based on drug quantities possessed and sold by coconspirators if their conduct was "(1) in furtherance of the conspiracy and (2) were either known to [the defendant] or were reasonably foreseeable to [him]"). This case, however, does not require us to decide whether we would adopt the Sixth Circuit's approach in Swiney if we were faced with analogous facts--McIntosh is subject to the enhancement based on his direct role in manufacturing the drug ingested by Jessica and is therefore strictly liable for her death. This case is not Swiney.

9

We turn briefly to two other nonmeritorious arguments raised by McIntosh. First, he asks us to recognize that an intervening cause of death or serious bodily injury resulting from a controlled substance forecloses application of the statutory enhancement. We decline to reach the issue because McIntosh presents no facts establishing an intervening cause of Jessica's death. See Patterson, 38 F.3d at 146 (refusing to reach the same question). He argues Jessica's death resulted from methamphetamine derived from a source other than the conspiracy. His argument flies in the face of the district court's fact-finding to the contrary. As we have already said, see supra, at 7 n.6, there was ample evidence to support the district court's fact-finding that the drug Jessica ingested originated with McIntosh. Second, McIntosh asks us to hold that the enhancement applies only if a defendant intended to cause death or knowingly risked death. Our conclusion that the statute imposes strict liability upon McIntosh for Jessica's death vitiates that argument.

## B. Apprendi

We turn next to McIntosh's contention that his sentence was imposed in violation of Apprendi, an issue raised by McIntosh's counsel during oral argument. In Apprendi, the Supreme Court announced a newly-recognized, constitutional principle: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 120 S. Ct. at 2362-63. These constitutional protections are, according to the Court, afforded by the due process protections of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment. See id. at 2355 (discussing the principle as foreshadowed in Jones v. United States, 526 U.S. 227, 243 n.6 (1999)).[9] McIntosh argues, in light of Apprendi, that his sentence was improperly

---

[9]In Jones, the Supreme Court noted that any fact that increases the maximum statutory penalty must also be charged in the indictment. See 526 U.S. at 243 n.6. In Apprendi, the Court declined to reach the indictment question because the defendant

enhanced because the district court employed a preponderance of the evidence standard, rather than a reasonable doubt standard, in ascertaining whether Jessica's death resulted from the use of methamphetamine for which McIntosh was responsible.

Because McIntosh entered a plea of guilty, he waived his right to a jury determination on all issues related to his prosecution.  See United States v. Martinez-Cruz, 186 F.3d 1102, 1104 (8th Cir. 1999) (guilty plea constitutes a waiver of the constitutional right to a jury trial).  By leaving open the issue of Jessica's death for determination by the district court at sentencing, however, he may have been entitled to hold the government to its constitutionally-required reasonable doubt burden of proof on the question, assuming Apprendi applies.  See, e.g., Rebmann, 226 F.3d at 524-25 (although plea of guilty waives the right to a jury trial, a defendant does not waive the right to have the sentencing court determine factual issues beyond a reasonable doubt).  But that is an issue we need not and do not decide because we conclude that Apprendi is inapplicable on two independent and alternative grounds.  First and foremost, an enhancement based on a finding of death or serious bodily injury does not increase the statutory maximum sentence authorized by Congress under § 841(b)(1)(A).  Alternatively, the sentence McIntosh received did not exceed the maximum sentence authorized under § 841(b)(1)(C), the penalty provision for the "offense simpliciter."

When a defendant is subject to § 841(b)(1)(A)'s penalties because of the quantity of drug admitted by him, as is the case with McIntosh,[10] the maximum statutory term

did not assert that the indictment returned by the grand jury was constitutionally defective.  See 120 S. Ct. at 2355-56 n.3.  Because we conclude Apprendi's protections are inapplicable, we find no reason to further address the indictment question left open by the Court.

[10]This court has previously held that a defendant cannot later challenge the applicability of a sentencing provision when he "voluntarily and explicitly" bargained for its application in his plea agreement and had full knowledge of the potential

11

of imprisonment authorized by Congress is life, regardless of whether death or serious injury results from use of the drug. See 21 U.S.C. § 841(b)(1)(A). Because the finding as to death does not increase the statutory maximum already authorized by Congress based on the admitted drug quantity, Apprendi's protections are not implicated. See United States v. Chavez, No. 00-1404, 2000 WL 1556050, at *2 (8th Cir. Oct. 20, 2000) (Apprendi does not apply when the statutory maximum is life, regardless of the challenged finding); United States v. Smith, 223 F.3d 554, 565-66 (7th Cir. 2000) (Apprendi is inapplicable where defendants faced a life sentence irrespective of the challenged factual finding made by the sentencing court); see also United States v. Aguayo-Delgado, 220 F.3d 926, 933 (8th Cir. 2000) (stating that Apprendi applies only if the challenged, nonjury sentencing finding increases the maximum sentence beyond the statutory range authorized by the offense of conviction), cert. denied, 2000 WL 1634209 (U.S. Nov. 27, 2000) (No. 00-6746). The death finding McIntosh challenges only increases the statutorily-required minimum term of imprisonment from 10 to 20 years. Although the Supreme Court may, and likely will, revisit the issue, the Court was careful to note in Apprendi that a fact which increases a mandatory minimum sentence (but not beyond the authorized statutory maximum) remains a sentencing factor and may be found by the sentencing court by a preponderance of the evidence. See Apprendi, 120 S. Ct. at 2361 n.13 (reserving for "another day" whether the Court's

---

sentence he faced under the provision. See United States v. Nguyen, 46 F.3d 781, 783 (8th Cir. 1995); United States v. Fritsch, 891 F.2d 667, 668 (8th Cir. 1989); see also United States v. Barrett, 173 F.3d 682, 684 (8th Cir. 1999) (denying defendant's challenge to drug quantity to which he stipulated in a plea agreement). Here, McIntosh clearly agreed in his plea agreement that he was to be sentenced under § 841(b) based on his responsibility for 500 grams or more of a mixture or substance containing methamphetamine and acknowledged that he faced a prison term of 10 years to life, with a mandatory minimum of 20 years if the district court found that Jessica's death resulted from methamphetamine attributable to him. The maximum sentence of life and the death-enhanced mandatory minimum were both explained to McIntosh at his arraignment. (Audio Tape: Arraignment held on Jan. 19, 1999, before Magistrate Judge Thomas J. Shields.)

12

prior holding in <u>McMillan v. Pennsylvania</u>, 477 U.S. 79 (1986), runs afoul of the protections recognized in <u>Apprendi</u>); <u>see also</u> <u>Aguayo-Delgado</u>, 220 F.3d at 934 ("<u>McMillan</u> allows the legislature to raise the minimum penalty associated with a crime based on non-jury factual findings, as long as the penalty is within the range specified for the crime for which the defendant was convicted by the jury.").

As we indicated above, an alternative ground exists for our conclusion that <u>Apprendi</u> affords no further constitutional protections to which McIntosh was entitled. Congress has authorized a maximum sentence of 20 years imprisonment under § 841(b)(1)(C), the penalty provision for the "offense simpliciter" (that is, the offense in its simplest form with no enhancements of any kind) as our brethren refer to it in <u>Aguayo-Delgado</u>, 220 F.3d at 933. However, as in <u>Aguayo-Delgado</u>, the district court's finding in this case did not increase McIntosh's sentence beyond § 841(b)(1)(C)'s unenhanced ceiling, <u>see</u> <u>id.</u> at 934, hence, as in <u>Aguayo-Delgado</u>, <u>Apprendi</u>'s protections are not implicated.

### III.

For the foregoing reasons, we affirm the judgment of the district court.

HEANEY, Circuit Judge, concurring separately.

I concur fully in Sections I and II.A. of the court's opinion, but I concur with respect to Section II.B. only on the alternate ground set forth in the last paragraph in that section of the opinion.

13

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.