# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2744

_____

Sierra Club, etc., et al,      *

             *

     Petitioners,      *

             *

     v.      *      Petition For Review of

             *      Determination of Environmental

Environmental Protection Agency,      *      Protection Agency

et al.,      *

             *

     Respondents.      *

_____

Submitted: April 12, 2001
Filed: June 6, 2001

_____

Before BYE, BEAM, Circuit Judges, and NANGLE,[1] Senior District Judge.

_____

NANGLE, Senior District Judge.

Petitioners Sierra Club and the Missouri Coalition for the Environment seek review of a final rule issued by EPA and Carol Browner, Administrator of EPA, approving a revision to the State of Missouri's state implementation plan (SIP) pertaining to air pollution control requirements. Missouri submitted its plan to EPA pursuant to the Clean Air Act ("CAA"). 42 U.S.C. §§ 7410, 7511(a)(1). The

_____

[1] The HONORABLE JOHN F. NANGLE, Senior United States District Judge for the Eastern District of Missouri, sitting by designation.

petitioners contend that EPA's approval of the SIP revision, which pertains specifically to ozone control requirements in the metropolitan St. Louis area, is inconsistent with the applicable statutory requirements and is otherwise arbitrary and capricious. We disagree and deny the petition for review.

## I. BACKGROUND

The Clean Air Act "establishes a partnership between EPA and the states for the attainment and maintenance of national air quality goals." Natural Res. Def. Council v. Browner, 57 F.3d 1122, 1123 (D.C. Cir. 1995). Title I of the CAA allocates regulatory responsibilities between EPA and the respective states. For pollutants meeting certain criteria (including ozone),[2] EPA is responsible for promulgating national ambient air quality standards (NAAQS), pursuant to Section 109 of the Act. CAA § 109(b)(1), 42 U.S.C. § 7409(b)(1).[3]

Under the CAA, states must then adopt and develop state plans to ensure that state air quality meets the NAAQS. 42 U.S.C. §§ 7407, 7410. Thus, each state must submit a state implementation plan (SIP) for each NAAQS promulgated by EPA, including the ozone NAAQS. 42 U.S.C. §§ 7407, 7410(a)(1); 65 Fed. Reg. 8083 (Feb. 17, 2000). The SIP must "include a program for the enforcement of [control measures]" and regulation of stationary sources in the targeted areas. 42 U.S.C. § 7410(a)(2)(C). Those states that fail to meet the NAAQS for the pollutant at issue are

---

[2] These pollutants currently include carbon monoxide, nitrogen dioxide, ozone, lead, particulate matter, and sulfur dioxide. 65 Fed. Reg. 8083 (Feb. 17, 2000).

[3] Ozone is one of the pollutants for which EPA has established a NAAQS. Ground level, or "bad" ozone (commonly known as "smog") should not be confused with upper atmospheric ozone (stratospheric, or "good" ozone), which forms a protective layer in the stratosphere that blocks harmful forms of ultraviolet radiation. Ground level ozone, or smog, is the result of a reaction between volatile organic compounds ("VOC") and nitrogen oxide ("Nox") in sunlight. 65 Fed. Reg. 31489 (May 18, 2000).

designated as "nonattainment areas." 42 U.S.C. § 7511(a); 65 Fed. Reg. 8083. The 1990 amendments to the Clean Air Act classified each ozone nonattainment area as "Marginal Area, a Moderate Area, a Serious Area, a Severe Area or an Extreme Area," depending on the severity of the ozone problems in each area as of 1990. CAA § 181(a), 42 U.S.C. § 7511(a)(1). Each classification is subject to a different attainment date, ranging from three to twenty years after November 15, 1990, depending on the severity of the ozone problem. Id.

In 1991, EPA designated the St. Louis area a "moderate" ozone nonattainment area, "based on its design value of 0.138 parts per million."[4] 65 Fed. Reg. 8083. This classification triggered the requirement that Missouri comply with the Clean Air Act control program in order to reduce its ozone levels to meet the NAAQS. 65 Fed. Reg. 8083-84. Under the control program, the states must submit their state implementation plan, which includes a "rate of progress" plan (ROPP), to EPA by a certain date. Id. at 8083.

With regard to the ROPP for moderate nonattainment areas such as St. Louis, the Clear Air Act specifies that "[b]y no later than three years after November 15, 1990, the State shall submit a revision to the applicable implementation plan to provide for volatile organic compound emissions reductions, within 6 years after November 15, 1990, of at least 15 percent from baseline emissions, accounting for any growth in emissions after 1990." CAA § 182(b)(1)(A)(i), 42 U.S.C. § 7511a (b)(1)(A)(i).[5] The

---

[4] The nonattainment area includes Madison, Monroe, and St. Clair counties in Illinois, as well as Franklin, Jefferson, St. Charles and St. Louis counties (and the city of St. Louis) in Missouri. 65 Fed. Reg. 8083.

[5] "Baseline emissions" for the purpose of determining the applicable ROPP are the "total amount of actual [volatile organic compound (VOC)] or NO subx emissions from all anthropogenic sources in the area during the calendar year 1990," adjusted to remove certain emissions excluded by the statute. 42 U.S.C. § 7511a(b)(1)(B). The state must ensure that the ROPP meets the 15% reduction, i.e., emissions must be no

3

statute required the ROPP emissions reductions to be implemented and achieved and required the St. Louis area to attain the NAAQS for ozone by no later than November 15, 1996. CAA § 182(b)(1)(A)(i), 42 U.S.C. § 7511a(b)(1)(A)(i).

In 1995, Missouri submitted a ROPP purporting to comply with the statutory requirements, but EPA never approved it.[6] 65 Fed. Reg. 8084. On November 12, 1999, Missouri submitted a revised ROPP, also purporting to comply with the 15% VOC reduction requirements of § 182(b)(1)(A). Id. EPA issued a final rule approving Missouri's revised ROPP on May 18, 2000. 65 Fed. Reg. 31485-89 (May 18, 2000). This petition for review was filed in this Court on July 17, 2000.

Petitioners raise several objections to the Missouri ROPP, which EPA ultimately approved. First, petitioners contend that the Missouri ROPP proposes various measures to control VOC emissions in the St. Louis area, but the state did not implement the control measures by 1996, and some measures have not yet been implemented.[7] Pets.' Br. at 10, 15. Further, petitioners argue that the Missouri ROPP

---

more than 85% of the 1990 baseline level, without regard to any changes in the area that might affect emissions levels. Thus, the measures developed by a particular state must offset any projected increase in emissions due to population growth or other factors that may have occurred between 1990 and 1996. 65 Fed. Reg. 13508 (Apr. 16, 1992).

[6] After reviewing that plan, EPA "proposed a limited approval and limited disapproval" of the submission. 65 Fed. Reg. 8084 (Feb. 17, 2000). The submitted plan relied, in substantial part, upon projected emissions reductions from an enhanced vehicle inspection and maintenance ("I/M") program but did not provide for funding of this program. Id. EPA did not take action on the proposed disapproval. Id. Rather, in November 1999, Missouri submitted a revised 15% ROPP. Id. EPA thereafter published a proposal to approve the revised 15% ROPP for St. Louis. 65 Fed. Reg. 8097 (Feb. 17, 2000).

[7] Missouri predicts that these controls will reduce the 1990 baseline VOC emissions by 15% after they are fully implemented. 65 Fed. Reg. 31486 (May 18, 2000). The ROPP calls for the attainment of the ozone NAAQS by the year 2003. Id.

4

"purports to account for emissions growth between 1990 and 1996." Id. at 10. The ROPP does not, however, "account for emissions growth anticipated (or realized) between 1996 and November 12, 1999 (the date of plan submission), the time at which all the ROPP controls will be fully implemented, or 2003 (when the reductions are predicted to be achieved)." Id. The petitioners also contend that the ROPP does not rely on actual emissions data for the years in which the state did account for growth in VOC emissions, erroneously choosing instead to use methods to arrive at "projections" for 1996 VOC emissions. Id. at 10, 24-28.

EPA contends that it reviewed the control measures contained in the 15% ROPP and concluded that the reductions claimed for each measure were properly calculated in accord with EPA's methodologies for such projections. Resp'ts' Br. at 15. EPA concluded that the contemplated control measures would reduce emissions by the required amount of 64.65 TPD. Id. The Court holds that this determination was not arbitrary and capricious.

## II. DISCUSSION

The petitioners argue that EPA acted contrary to law by approving a plan submitted by the State of Missouri that purports to achieve a 15% reduction in baseline VOC emissions, but does not account for growth in emissions after 1996. Pets.' Br. at 15. Additionally, the petitioners contend that EPA acted arbitrarily and capriciously in approving the same plan, which relies on "projected" emissions for certain years to determine the required level of reductions, instead of relying on actual emissions data. Id. at 24.

This Court reviews EPA's final action based upon the applicable standard set forth in the Administrative Procedure Act, 5 U.S.C. § 706. Missouri Limestone Producers Ass'n v. Browner, 165 F.3d 619, 621 (8th Cir. 1999). Under that standard, this Court will set aside EPA's action only if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This

standard of review gives agency decisions "a high degree of deference." <u>Missouri Limestone Producers Ass'n</u>, 165 F.3d at 621 (internal citations and quotations omitted).

Additionally, this Court's standard for reviewing an agency's interpretation of a statute it administers is set forth in <u>Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837, 842-43 (1984); <u>see also</u> <u>Regions Hosp. v. Shalala</u>, 522 U.S. 448, 457 (1998) (reiterating the standard set forth in <u>Chevron</u>).[8] Pursuant to <u>Chevron</u>, a court reviewing an agency's construction of a statute which it administers must ask two questions. <u>Chevron</u>, 467 U.S. at 842. The first question is whether the Congress has directly spoken to the precise question at issue. <u>Id</u>. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." <u>Id</u>.

---

[8] In their reply brief, the petitioners argue that respondent EPA waived any reliance on the deferential standard set forth in <u>Chevron</u> by making no claim of statutory ambiguity in its final rule and by failing to "articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" Pets.' Reply Br. at 9-10 (quoting <u>Madison Gas & Elec. Co. v. EPA</u>, 25 F.3d 526, 529 (7th Cir. 1994) (internal citations and quotations omitted)). This Court rejects petitioners' argument. First, the petitioners cite no authority, and the Court can find none, for the proposition that EPA waives deferential review under <u>Chevron</u> if it fails to specifically analyze in its final rule whether it considered 42 U.S.C. § 7511a(b)(1)(A) to be ambiguous.

Additionally, even if EPA did not specifically note the ambiguity, the final rule discusses the objections made by petitioners to the proposed rule. <u>See</u> 65 Fed. Reg. 31485-86. The Court finds that EPA's discussion of the petitioners' objections implies that EPA acknowledged an ambiguity in the statute's interpretation. Further, EPA's responses to the petitioners' comments satisfy the requirement that EPA "articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" <u>Madison Gas</u>, 25 F.3d at 529 (internal citations and quotations omitted).

If the court finds, however, that Congress has not directly spoken to the precise question at issue, the court then proceeds to the second prong of the Chevron test. At that stage, "the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation." Id. "Rather, if the statute is silent or ambiguous with respect to a specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Id. The Supreme Court in Chevron further explained that "[t]he court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." Id. at 843 n.11.

A.  Potential Post-1996 Emissions Growth

The petitioners argue that EPA acted contrary to law by approving a plan submitted by the State of Missouri that purports to achieve a 15 percent reduction in baseline VOC emissions, but does not account for growth in emissions after 1996. According to petitioners, the CAA, 42 U.S.C. § 7511a(b)(1)(A)(i) demands a 15 percent reduction in VOC emissions, accounting for "any growth . . . after 1990." Pets.' Br. at 16. The petitioners argue that due to the absence of any accounting for post-1996 growth in VOC emissions, there can be no assurance that implementation of these controls will yield any actual reduction in 1990 baseline VOC emissions, much less that the controls will achieve the mandated reduction of 15 percent of the baseline.

In the absence of any accounting for post-1996 growth in VOC emissions, the petitioners contend that "it is utterly arbitrary–because impossible–to conclude that Missouri's ROPP satisfies the statutory requirement." Id. at 17. For this reason, the petitioners contend that the ROPP on its face fails to comply with the statutory requirement, and EPA's approval of the ROPP is contrary to law. Id.

The Court rejects the petitioners' argument. Initially, the Court finds that Congress did not directly speak to the issue in dispute here–that is, how the statute should be construed when a state fails to submit its SIP within the prescribed deadlines set forth in the CAA, section 182(b)(1)(A)(i). Thus, the Court proceeds to the second prong of Chevron to determine "whether the agency's answer is based on a permissible construction of the statute." Chevron, 467 U.S. at 843. The Court holds that EPA's interpretation is reasonable and permissible.

Section 182(b)(1)(A)(i) of the Clean Air Act provides:

> "By no later than 3 years after November 15, 1990, the State shall submit a revision to the applicable implementation plan to provide for [VOC] emission reductions, within 6 years after November 15, 1990, of at least 15 percent from baseline emissions, accounting for any growth in emissions after 1990.

42 U.S.C. § 7511a(b)(1)(A)(i). Contrary to petitioners' suggestion, this statute specifically requires that the plan provide the necessary VOC emission reductions "within 6 years after November 15, 1990." 42 U.S.C. § 7511a(b)(1)(A)(i) (emphasis added). Although the petitioners' interpretation may also be reasonable, "[t]he court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." Chevron, 467 U.S. at 843 n.11.

As respondent EPA argues, the statute at issue refers to a specific date–November 1996. Thus, EPA could have reasonably found that "[t]he growth for which [the 15% ROPP] must account is clearly tied to 1996." 65 Fed. Reg. 31486. Additionally, there is no clear indication that Congress intended to alter the amount of reductions that the state must achieve if that state missed the statutory deadline. As

respondents suggest, EPA's decision may either have the effect of rewarding or punishing a delinquent state, depending on whether emissions increase or decrease beyond the statutory period.

Additionally, Congress has delineated other consequences for missed deadlines. If a state fails to timely submit a complete SIP or if EPA disapproves the SIP, the Act imposes sanctions on the state unless it cures the deficiency within 18 months of EPA's finding. 42 U.S.C. § 7509(a)(4). In addition, the CAA requires EPA to promulgate a federal implementation plan ("FIP") within two years of finding that a state has failed to make a required submission or an adequate submission or if EPA disapproves of the SIP in whole or in part. 42 U.S.C. § 7410(c)(1)(A)-(B). For the above reasons, the Court cannot conclude that EPA's final rule was arbitrary and capricious as to its approval of a plan that failed to consider post-1996 emissions.

B.  Projected Data versus Actual Data

Petitioners also argue that EPA acted arbitrarily and capriciously in approving Missouri's ROPP plan because it relies on "projected" emissions for certain years to determine the required level of reductions, instead of relying on actual emissions data. The Court also rejects this argument. Because Congress has not directly spoken to this precise question, this Court analyzes EPA's determination pursuant to the second prong of the Chevron test here as well. Chevron, 467 U.S. at 843.

Petitioners contend that EPA's approval of the use of projected emissions data was arbitrary because "[t]he 1996 'projected emissions' may bear no relationship to actual VOC emissions in 1996, further contributing to the uncertainty about whether the ROPP's controls will actually yield the required level of VOC emissions reductions." Pets.' Br. at 25. As respondents suggest, however, the CAA clearly provides for the use of projected data since the statute requires the state plan to be submitted in 1993, even though the calculations will include emissions levels through 1996. 42 U.S.C. § 7511a(b)(1)(A)(i); 65 Fed. Reg. at 31486 (arguing that "[t]he 1993

due date leads to a reasonable conclusion that Congress intended for the states to determine the required level of emissions reductions based on *projected* as opposed to actual emissions") (emphasis in original). Thus, the Court finds that it was reasonable for EPA to determine that, under the language of the statute, a late-filing state should use projected data as well. Id.

EPA contended in its final rule that pervasive use of projected data, rather than actual, ensures equitable treatment of all states. 65 Fed. Reg. at 31486. Specifically, EPA concluded that such an approach:

> ensures there is no advantage gained from delayed implementation of emission control measures until after the compliance date has passed and actual emissions can be estimated, rather than risk implementing a control plan designed around emission projections that are too high.

65 Fed. Reg. at 31486-87.

The Court does not deem EPA's rationale to be arbitrary and capricious. Additionally, as respondents suggest, CAA section 182(b)(1)(A)(i), does not indicate that a different rule should apply if the 15% ROPP is not submitted within the statutory time-frame. Thus, the petitioners have failed to demonstrate that EPA's interpretation of the statute was unreasonable and impermissible under Chevron, 467 U.S. at 842-43.

## III. CONCLUSION

This Court finds that respondent EPA's interpretation of the Clean Air Act, 42 U.S.C. § 7511a(b)(1)(A)(i), was reasonable and permissible under the second prong of Chevron. Accordingly, the Court denies the petitioners' request for review of EPA's approval of the state of Missouri's revised state implementation plan (SIP).

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.