# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2458

_____

| | | |
|---|---|---|
| Amy E. Haug; Peter V. Haug, individually and as Class Representatives, | * * * * | |
| Plaintiff-Appellees, | * * | |
| v. | * * | |
| Bank of America, N.A, | * * | |
| Defendant-Appellant. | * * | |
| ------------------------------------------------ | | Appeal from the United States District Court for the |
| | * | Eastern District of Missouri |
| American Bankers Association; America's Community Bankers; American Escrow Association; American Land Title Association; Real Estate Service Providers Council; The Realty Alliance, Title/Appraisal Vendor Management Association, | * * * * * * * * | |
| Amicus on Behalf of Appellant. | * * | |
| United States; National Association of Consumer Advocates, | * * * | |
| Amicus on Behalf of Appellees. | * | |

_____

Submitted: November 6, 2002

Filed: January 23, 2003
_____

Before McMILLIAN, MURPHY and MELLOY, Circuit Judges.
_____

McMILLIAN, Circuit Judge.

Bank of America, N.A. ("Defendant"), appeals from the order entered in the United States District Court for the Eastern District of Missouri denying Defendant's motion to dismiss. See Haug v. Bank of America, N.A., No. 4:01-CV-1146 CAS (E.D. Mo. Mar. 29, 2002) ("slip op."). For reversal, Defendant argues that the district court erred in holding that a single service provider violates § 8(b) of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(b) ("Section 8(b)"), whenever it receives an unearned fee. Id. at 11. In addition, Defendant argues that the district court erred in relying on a policy statement issued by the Department of Housing and Urban Development ("HUD") interpreting Section 8(b) as prohibiting payment or receipt of any portion or percentage of a settlement service fee that is "unearned," regardless of whether the entire charge is retained by a single individual or entity or is split or shared with a third party. Id. For the reasons discussed below, we reverse the order of the district court as it pertains to Section 8(b) of RESPA and remand the case for further proceedings consistent with this opinion.

Jurisdiction in the district court was proper based on 28 U.S.C. § 1331. Defendant timely sought interlocutory review of the district court's order, which was permitted by the district court and granted by this court. Accordingly, this court has jurisdiction over this interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

-2-

BACKGROUND

The facts of this case are not in dispute. On May 11, 2001, Amy E. Haug and Peter V. Haug ("Plaintiffs"), citizens of Missouri, individually and as class representatives, filed an eight-count putative class action complaint against Defendant in the Circuit Court for the City of St. Louis. Plaintiffs alleged that from May 8, 1996, through the date of certification, based on Defendant's nondisclosures, or false and misleading disclosures, they unknowingly paid charges for credit reports or other loan related services for federally related mortgage loans that exceeded Defendant's actual costs for those services. According to Plaintiffs, those charges violated RESPA and the Missouri Merchandising Practices Act (MMPA), Mo. Rev. Stat. § 407.020 et seq.[1]

More specifically, Plaintiffs allege that they obtained a mortgage loan and, pursuant to a contract with Defendant, paid $50.00 for a credit report, $300.00 for an appraisal, and $25.00 for document delivery services in connection with the loan. Plaintiffs alleged that Defendant purchased the credit report from a third party vendor for less than $15.00, and that Defendant purchased the appraisal and document delivery services from a third party vendor at a cost significantly less than the amount

---

[1]Plaintiffs contend that Defendant's alleged violation of the Real Estate Settlement Procedures Act ("RESPA") constitutes an "unfair practice" under the Missouri Merchandising Practices Act ("MMPA"). Mo. Rev. Stat. § 407-020.1 provides:

The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce, . . . in or from the state of Missouri, is declared to be an unlawful practice.

they were charged. Plaintiffs contend that Defendant's overcharges constituted a "split of fees" or "unearned fees" in violation of Section 8(b).

Defendant, a Delaware corporation with its principal place of business in North Carolina, removed the case to federal court pursuant to 28 U.S.C. § 1441(b), on the grounds that the claims against it invoked RESPA. The district court denied Plaintiffs' motion to remand on January 22, 2002.

Defendant then filed a motion to dismiss counts I though III of the complaint for failure to state a claim.[2] Relying on Echevarria v. Chicago Title & Trust Co., 256 F.3d 623 (7th Cir. 2001) (Echevarria), Defendant argued that the plain language of Section 8(b), entitled "Prohibition against kickbacks and unearned fees," requires that one party must give and another party must receive an unearned portion, split, or percentage of a settlement service fee. Defendant argues that Plaintiffs failed to state a RESPA claim because they did not allege a third party kickback or fee split with respect to the overcharges. On March 29, 2002, the district court denied Defendant's motion to dismiss, citing a 2001 HUD Policy Statement which states that Section 8(b) proscribes all unearned portions or percentages of settlement fees as well as splits, meaning a single settlement service provider violates Section 8(b) whenever it receives an unearned fee. Slip op. at 11 (quoting HUD's 2001 Official Policy Statement, 66 Fed. Reg. 53,052, 53,058) ("HUD Policy Statement"). This interlocutory appeal followed.

The National Association of Consumer Advocates ("Consumer Advocates") and the Department of Justice ("DOJ") on behalf of HUD each filed an amicus brief in support of affirming the district court's decision. The American Bankers

---

[2]Defendants presented numerous grounds for dismissal, but the only issue certified for interlocutory appeal is whether Defendant violated Section 8(b) of RESPA.

Association, joined by several other real estate settlement service businesses,[3] filed an amicus brief arguing that the decision of the district court should be reversed.

## DISCUSSION

We review the district court's statutory interpretation *de novo*. See, e.g., United States v. Milk, 281 F.3d 762, 766 (8th Cir. 2002) (citing United States v. McIntosh, 236 F.3d 968, 972 (8th Cir. 2001)).

We begin our inquiry into the intended meaning of the statute with the language of the statute itself. Milk, 281 F.3d at 766 (citing McIntosh, 236 F.3d at 972). "Where the language of a statute is 'unambiguous, the statute should be enforced as written unless there is clear legislative intent to the contrary.'" Id. at 766 (quoting McIntosh, 236 F.3d at 972). If the intent of the statute is clear, the judicial inquiry ends. United States v. S.A., 129 F.3d 995, 998 (8th Cir. 1997) (citing Citicasters v. McCaskill, 89 F.3d 1350, 1354-55 (8th Cir. 1996)).

Section 8(b) of RESPA provides:

> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. § 2607(b).

---

[3]Other associations joining the American Bankers Association include: America's Community Bankers, American Escrow Association, American Land Title Association, Real Estate Service Providers Council, The Realty Alliance, and Title/Appraisal Vendor Management Association.

Plaintiffs read the word "and" in the phrase "no person shall give and no person shall accept" to prohibit any person from giving or accepting an unearned fee. Under this interpretation, giving or accepting an unearned fee can constitute a violation of Section 8(b) because the statute does not require a showing that the person illegally shared a fee with a third party. Plaintiffs maintain that their reading is consistent with RESPA's remedial purpose as a consumer protection statute, enacted to provide consumers with "greater and more timely information on the nature of the costs of the [real estate] settlement process," and to limit the "unnecessarily high settlement charges caused by certain abusive practices." 12 U.S.C. § 2601.

We disagree with Plaintiffs' interpretation and hold that Section 8(b) is an anti-kickback provision that unambiguously requires at least two parties to share a settlement fee in order to violate the statute. Congress intended Section 8(b) "to prohibit all kickback and referral fee arrangements whereby any payment is made or 'thing of value' is furnished for the referral of real estate settlement business . . . [and to prohibit] a person that renders a settlement service from giving or rebating any portion of the charge to any other person except in return for services actually performed." Mercado v. Calumet Fed. Savings & Loan Ass'n, 763 F.2d 269, 270-71 (7th Cir. 1985) (Mercado) (quoting S. Rep. No. 93-866, 93rd Cong., 2d Sess. (1974), reprinted in 1974 U.S.C.C.A.N. 6551). This reading of the statute is consistent with the decisions of both the Fourth and Seventh Circuits, which have held that the plain language of Section 8(b) requires plaintiffs to plead facts showing that the defendant illegally shared fees with a third party.[4] See Boulware v. Crossland Mortgage Corp., 291 F.3d 261, 265 (4th Cir. 2002) (Boulware) (holding "8(b) only prohibits overcharges when a 'portion' or 'percentage' of the overcharge is kicked back to or

---

[4]The Seventh Circuit recently upheld Echevarria v. Chicago Title & Trust Co.,256 F.3d 623, 626-28 (7th Cir. 2001) (Echevarria), in Krzalic v. Republic Title Co., 2002 WL 31873609 (7th Cir. Dec. 26, 2002) (Krzalic). The Krzalic court held that Section 8(b) of RESPA is an anti-kickback statute that does not apply to the "repricing of incidental charges." Id. at *5.

'split' with a third party"); <u>Echevarria</u>, 256 F.3d at 626 (affirming dismissal under Fed. R. Civ. P. 12(b)(6) where plaintiffs failed to plead facts tending to show the third party involvement required for a Section 8(b) claim). We therefore hold that Section 8(b) prohibits only transactions in which the defendant shares a "portion, split, or percentage of any charge" with a third party. <u>See</u> <u>Durr v. Intercounty Title Co.</u>, 14 F.3d 1183, 1187 (7th Cir. 1994) (<u>Durr</u>) (affirming district court's dismissal of RESPA claim where plaintiff failed to allege defendant's overcharge was a "portion, split or percentage of any charge" given to a third party) (citing <u>Mercado</u>, 763 F.2d at 270). In this case, all that Plaintiffs allege is that Defendant charged Plaintiffs more for certain services than Defendant paid for them. Such an overcharge, standing alone, does not violate Section 8(b) of RESPA. <u>See</u> <u>Boulware</u>, 291 F.3d at 265 (Section 8(b) does not apply where defendant simply collected an overcharge and retained it as a "windfall") (citing <u>Durr</u>,14 F.3d at 1187).

Plaintiffs and Amici DOJ and Consumer Advocates cite <u>United States v. Gannon</u>, 684 F.2d 433 (7th Cir. 1981) (en banc) (<u>Gannon</u>), to support their contention that Section 8(b) does not necessarily require the division or split of fees with a third party. In <u>Gannon,</u> the Seventh Circuit held that an employee of the county recorder's office violated Section 8(b) by receiving and retaining for himself charges in addition to the regular filing fees. Noting that "Congress' aim was to stop all abusive practices that unreasonably inflate federally related settlement costs," <u>id.</u> at 438, the <u>Gannon</u> court held that "a single individual can violate § 2607(b) by receiving in his official capacity a 'charge' for the rendering of settlement services, but personally keeping a portion of the charge in fact for something other than the performance of those services." <u>Id.</u> Starting with <u>Mercado</u>, however, subsequent Seventh Circuit cases have distinguished <u>Gannon</u> and required payment to a third party in order to violate Section 8(b). <u>Mercado</u>, 763 F.2d at 271. The <u>Mercado</u> court noted that "[p]arts of the opinion in <u>Gannon</u> may be read to state that any payment in excess of the value of services rendered is an abusive practice, the equivalent of splitting fees and equally to be condemned." <u>Id.</u> The <u>Mercado</u> court went on state, however, that the individual

defendant in Gannon was, in effect, wearing two hats: receiving payments in both his official capacity and his personal capacity, effectively making a kickback to himself. Id. Therefore, the Mercado court declined to extend Gannon to hold that Section 8(b) covered all payments in excess of the value of services rendered.[5] Id.; see also Echevarria, 256 F.3d at 626 (holding Section 8(b) did not apply where defendant both collected and retained fees from plaintiffs in the same capacity); Durr,14 F.3d at 1187 ("RESPA 'requires at least two parties to share fees.'") (quoting Mercado,763 F.2d at 270). In the present case, Defendant collected fees from Plaintiffs in its capacity as a mortgage lender and retained the overcharges in that same capacity, meaning there was no splitting of sharing or fees required for a Section 8(b) violation. See Echevarria, 145 F.3d at 626 ("We cannot employ a legal fiction to treat [defendant] as both the giver and third party receiver of unearned fees because it acted in the same legal capacity when it overcharged plaintiffs and when it retained the monies in excess of the recording fees.").

Although not dispositive, the legislative history of what ultimately became Section 8(b) further supports the proposition that Section 8(b) was intended to cover the split or kickback of real estate settlement services fees, not simply overcharges. Congress considered and rejected proposed legislation that would have set a system of price controls for settlement services fees. See Mercado, 763 F.2d at 271 (citing 1974 U.S.C.C.A.N. 6549-50). In 1973, two settlement cost bills were introduced to Congress and referred to the Committee on Banking, Housing, and Urban Affairs. Senator Brock introduced S. 2228, and Senator Proxmire introduced S. 2288. Although the bills were similar in many respects, they differed with regard to the authority bestowed on HUD and the Veterans Administration ("VA") to regulate

---

[5]The Mercado court also noted that Gannon did not review the question of "unduly high"fees because the case focused on an arrangement where the defendant collected more that the requisite fee, remitted the appropriate amount to the county, and kept the rest for himself. Mercado v. Calumet Fed. Savings & Loan Ass'n, 763 F.3d 269, 271 (7th Cir. 1985).

settlement services charges. The Proxmire bill would have required HUD to establish maximum amounts for settlement charges on virtually all mortgage transactions within 180 days of enactment. The Brock bill, which the Committee ultimately adopted, repealed section 701 of the Emergency Home Finance Act of 1970, which bestowed authority on HUD and the VA to regulate standards for settlement costs. Rather than directly regulating closing costs by limiting real estate settlement charges, Congress instead chose to "regulate the underlying business relationships and procedures of which the costs are a function."[6] 1974 U.S.C.C.A.N. 6548. In so doing, Congress specifically designed Section 8(b) to eliminate kickbacks and fee splits by "prohibit[ing] a person or company that renders a settlement service from giving or rebating any portion of the charge to any other person except in return for services actually performed." Id. at 6551.

Defendant also argues that the district court erred in relying upon the HUD Policy Statement interpreting Section 8(b) to prohibit the paying or accepting of any unearned fee. In response, Plaintiffs argue that under the plain language of Section 8(b), a single person may violate the provision by marking-up third party settlement services and retaining the difference as an unearned fee. In the alternative, Plaintiffs argue the "[n]o person shall give and no person shall accept" language of Section 8(b) is ambiguous[7]; therefore, deference to the HUD Policy Statement is warranted.

---

[6]Commenting on the ills that the legislation was designed to remedy, the Senate Report to the Committee on Banking, Housing, and Urban Affairs noted "[i]n a number of areas of the country, competitive forces in the conveyancing industry have lead to the payment of referral fees, kickbacks, rebates and unearned commissions as inducements to those persons who are in a position to refer settlement business." 1974 U.S.C.C.A.N. 6551.

[7]Amicus DOJ contends that the disparate readings of the same statute by different legal authorities support the conclusion that Section 8(b) is ambiguous. For example, HUD reads the "no person shall give and no person shall accept" language of Section 8(b) to prohibit two separate actions, each of which can constitute a

When reviewing an agency's interpretation of a statute, this court must ask "whether the Congress has directly spoken to the precise question at issue." Sierra Club v. EPA, 252 F.3d 943, 947 (8th Cir. 2001) (citing Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842 (1984) (Chevron)). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. (quoting Chevron, 467 U.S. at 842); see also Hennepin County Med. Ctr. v. Shalala, 81 F.3d 743, 748 (8th Cir. 1996) (Hennepin County Med. Ctr.) ("The plain meaning of a statute controls, if there is one, regardless of an agency's interpretation."). Because the language of Section 8(b) unambiguously requires the giving or receiving of an unearned portion of a settlement fee, the district court's inquiry should have ended with the plain language of the statute.

The district court did not make an explicit finding that Section 8(b) is ambiguous before examining the HUD Policy Statement.[8] See slip op. at 9-10 (citing

---

violation. The Fourth Circuit, however, has held that the language applied only to a kickback or fee-splitting situation involving a third party. Boulware v. Crossland Mortgage Corp., 291 F.3d 261, 265 (4th Cir. 2002). See Brief for United States as *Amicus Curiae* at 22. HUD's interpretation is therefore entitled to deference if it does not "exceed [] the bounds of the permissible." Id. (quoting Barnhart v. Walton, 122 S.Ct. 1265, 1269 (2002)).

[8]Noting that the 2001 HUD Policy Statement was issued in response to Echevarria, 256 F.3d 623, the district court cited the portion of the HUD Policy Statement that provides:

> In HUD's view, Section 8(b) forbids the paying or accepting of any portion or percentage of a settlement service – including up to 100% – that is unearned, whether the entire charge is divided or split among more than one person or entity or is retained by a single person. Simply put, given that Section 8(b) proscribes unearned portions or percentages as well as splits, HUD does not regard the provision as restricting only fee splitting among settlement service providers.

66 Fed. Reg. 53,052).  Deciding that the HUD Policy Statement was due "substantial deference," the district court relied on our recent decision, <u>Glover v. Standard Fed. Bank</u>, 283 F.3d 953 (8th Cir. 2002) (<u>Glover</u>).  <u>Glover</u> addressed  whether the payment of a "yield spread premium" ("YSP") to a home refinancing broker violated Section 8(a) of RESPA, 12 U.S.C. § 2607(a), prohibiting fees or kickbacks for referrals in connection with a real estate settlement service involving federal mortgage loans, or whether the YSP qualified for the exception under 12 U.S.C. § 2607(c), which permits payments for goods actually furnished or services actually performed.  We determined that RESPA did not specifically address the legality of YSP payments to mortgage brokers and that Congress had not expressly set forth its intent in the statute regarding that particular issue.  <u>Id.</u> at 961.  Therefore, pursuant to <u>Chevron</u>, we reviewed two HUD policy statements interpreting RESPA on the issue of lender payments to mortgage brokers, including the HUD Policy Statement at issue in this case, which contains a separate discussion of Section 8(b).[9]  We determined that "the Policy Statements issued by HUD [on the YSP issue] reflect a reasoned view of a responsible agency which is consistent with the statute and the regulation and which constitutes a body of experience and informed judgment that this court may look to as determinative authority."  <u>Id.</u> at 962-63.  Based on the Policy Statements, we concluded that HUD required a case-specific determination of whether goods or facilities were actually furnished or services were actually performed and whether the payment amounts were reasonably related to the value of the goods, facilities, or services.  <u>Id.</u> at 965.  Because such determinations must be made on a loan-by-loan basis, we held that certification of the plaintiffs' class was impractical.  <u>Id.</u>

---

Slip op. at 10 (quoting 66 Fed. Reg. 53,058).

[9]The second policy statement was Real Estate Settlement Procedures Act Statement of Policy 1999-1 Regarding Lender Payment to Mortgage Brokers, 64 Fed. Reg. 10,080 (Mar. 1, 1999).

We decline to extend our ruling in <u>Glover</u> to this case. <u>Glover</u> involved two different RESPA provisions, Sections 8(a) and 8(c). Moreover, before reviewing the HUD Policy Statements in <u>Glover</u>, this court made a threshold determination that the precise issue before the court was not directly addressed by RESPA. <u>See</u> <u>id.</u> at 961. <u>Chevron</u> deference was appropriate in <u>Glover</u>; such deference is not due here because we have held that Section 8(b) is unambiguous. <u>See</u> <u>In Home Health, Inc. v. Shalala</u>, 188 F.3d 1043, 1047 (8th Cir. 1999) (no deference due to agency interpretation that contradicts the plain language of a statute); <u>Hennepin County Med. Ctr.</u>, 81 F.3d at 749 (statutes and their legislative history were "sufficiently clear to support the conclusion that there is no 'gap' to be filled by the Secretary's interpretation.") (citing <u>Chevron</u>, 467 U.S. at 844). This result is consistent with the Fourth Circuit's ruling in <u>Boulware</u>, 291 F.3d at 267, which held that the regulation implementing the HUD Policy Statement, 24 C.F.R. § 3500.14(c) ("Regulation X"), was not entitled to deference under <u>Chevron</u> and that the text of Section 8(b) controlled. Our holding is also in keeping with the Seventh Circuit's recent decision in <u>Krzalic v. Republic Title Co.</u>, 2002 WL 31873609 (7th Cir. Dec. 26, 2002), which held that the language of Section 8(b) is clear on its face and that <u>Chevron</u> deference to the HUD Policy Statement was not warranted. <u>Id.</u> at *5 ("There is not enough play in the statutory joints to allow HUD to impose its own 'interpretation' under the aegis of <u>Chevron</u>.").[10]

---

[10]The <u>Krzalic</u> court also distinguished <u>Glover</u> on the grounds that the portion of the HUD Policy Statement deferred to in that case concerned the payment of yield-spread-premiums ("YSP"). <u>Krzalic</u>, 2002 WL 31873609, at *6. <u>Krzalic</u> noted that HUD first addressed the YSP issue in a 1999 policy statement, <u>see</u> <u>supra</u> note 10, which HUD issued "after meeting with government representatives plus a broad range of consumer and industry groups." <u>Id.</u> (citing 64 Fed. Reg. 10080, 10084 (Mar. 1, 1999)). Therefore, both the 1999 policy statement and the HUD Policy Statement issued in 2001contain a comprehensive discussion and specific findings regarding the payment of YSPs. <u>Id.</u> In contrast, <u>Krzalic</u> notes that the portion of the HUD Policy Statement concerning Section 8(b) and was "perfunctory;" HUD failed to present any evidence or interpretive methodology, or identify an abusive practice which supported its interpretation of Section 8(b). <u>Id.</u>

CONCLUSION

We hold that the plain language of Section 8(b) requires plaintiffs to plead facts showing that the defendant illegally shared fees with a third party and that the district court erred in relying on the HUD Policy Statement. Accordingly, we reverse the order of the district court as it pertains to Section 8(b) of RESPA. The case is remanded to the district court for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.