[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 15, 2002
THOMAS K. KAHN
CLERK

_____

No. 00-10487

_____

D. C. Docket No. 99-00174 CR-ORL-18C

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EDWARD RODRIGUEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(January 15, 2002)**

Before ANDERSON, Chief Judge, EDMONDSON and RONEY, Circuit Judges.

ANDERSON, Chief Judge:

Defendant Edward Rodriguez pled guilty to one charge of conspiracy to possess heroin with the intent to distribute, in violation of 21 U.S.C. §§ 841(a) and 846, and two counts of possession of heroin with the intent to distribute, in violation of 21 U.S.C. § 841(a). On January 19, 2000, the district court sentenced Rodriguez to twenty years in prison and five years of supervised release. Rodriguez appeals his sentence, and we affirm.

## I. BACKGROUND

On August 11, 1999, Samuel Velez-Gomez ("Gomez") sold heroin to Rodriguez. Rodriguez then sold one gram of heroin to James Warren Elliot, Jr. ("Elliot"). Elliot then entered a hotel room and asked two men inside the room how to use the heroin. The two men told Elliot that they were not sure how to use it. Elliot then proceeded to snort some of the heroin.

That evening, a hotel employee found Elliot unconscious and snoring loudly in a hallway of the hotel. The employee found Elliot's roommate, James Gann ("Gann"), and the two men dragged Elliot to his hotel room and placed him on his bed. Approximately one hour later, Gann returned to the hotel room and discovered Elliot cold and without a pulse. Paramedics took Elliot to the hospital, where Elliot was pronounced dead. A medical examiner determined that Elliot

2

died as a result of cardiorespiratory arrest due to heroin toxicity. Elliot's blood contained .351 milligrams per liter of morphine, which exceeded the .070 to .350 milligrams per liter lethal range for a non-tolerant user.

The next day, Gann, who was cooperating with police, met Rodriguez to purchase heroin. Rodriguez called Gomez, and when Gomez arrived, the police arrested both Rodriguez and Gomez.

In his guilty plea, Rodriguez admitted that he sold heroin to Elliot on August 11, 1999. At sentencing, Rodriguez admitted that Elliot had ingested the heroin that Rodriguez had sold to him and that the heroin was in Elliot's system when he died. Rodriguez objected, however, to being held accountable for Elliot's death, arguing that the hotel employee and Gann could have prevented Elliot's death if they had called the paramedics when they observed Elliot unconscious in the hallway. The district court overruled Rodriguez' objection, and found that, but for ingesting the heroin provided by Rodriguez, Elliot would not have died. The district court sentenced Rodriguez to twenty years in prison and five years of supervised release.

## II. DISCUSSION

Rodriguez challenges his sentence on two grounds. He first contends that

the district court violated his due process rights and right to trial by jury when it enhanced his sentence pursuant to 21 U.S.C. § 841(b)(1)(C),[1] because the court found only by a preponderance of the evidence, rather than beyond a reasonable doubt, that "death or serious bodily injury" had resulted from Rodriguez' offense. This argument raises the issue of the constitutional protections recently recognized by the Supreme Court in Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000).[2]

Rodriguez also contends that the district court erred in enhancing his sentence under § 841(b)(1)(C) and U.S.S.G. § 2D1.1, because there was insufficient evidence to connect his offense with Elliot's death. Specifically, he argues that the intervening acts of the hotel employee and Gann severed the causal connection, because they could have saved Elliot's life if they had called the

---

[1]    21 U.S.C. § 841(b)(1)(C) provides that, in the case of a heroin offense, the defendant "shall be sentenced to a term of imprisonment of not more than 20 years and if death or serious bodily injury results from the use of such substance shall be sentenced to a term of imprisonment of not less than twenty years or more than life."

[2]    Rodriquez also argues that the district court violated his due process rights and right to trial by jury when it enhanced his sentence pursuant to U.S.S.G. § 2D1.1, because "death or serious bodily injury" was not established beyond a reasonable doubt. U.S.S.G. § 2D1.1(a)(2) sets the base offense level at 38 if the defendant is convicted under 21 U.S.C. § 841(b)(1)(C) "and the offense of conviction establishes that death or serious bodily injury resulted from the use of the substance." However, Apprendi does not affect the district court's determinations under the Sentencing Guidelines. United States v. Sanchez, 269 F.3d 1250, 1262 (11th Cir. 2001); United States v. Harris, 244 F.3d 828, 830 (11th Cir. 2001); United States v. Nealy, 232 F.3d 825, 829 n.3 (11th Cir. 2000).

4

paramedics when they saw Elliot unconscious in the hallway rather than placing Elliot on a bed and leaving him alone for approximately one hour.

A. Apprendi

Rodriguez first argues that his sentence was improperly enhanced because the district court employed a preponderance of the evidence standard, rather than a reasonable doubt standard, in ascertaining whether Elliot's death resulted from his use of the heroin that Rodriguez admitted selling to him. Because Rodriguez did not raise the issue of the district court's failure to find "death or serious bodily injury" beyond a reasonable doubt below, we review it only for plain error. See United States v. Candelario, 240 F.3d 1300, 1306 (11th Cir. 2001).

In Apprendi, the Supreme Court stated that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S. Ct. at 2362-63. In this case, there is no Apprendi error, because the sentence that Rodriguez received – twenty years – does not exceed the maximum sentence authorized under § 841(b)(1)(C) for a heroin offense without reference to "death or serious bodily injury." United States v. Sanchez, 269 F.3d 1250, 1268 (11th Cir. 2001) (holding that "Apprendi has no effect on cases in which a defendant's actual sentence falls within the range

5

prescribed by the statute for the crime of conviction.") (emphasis in original);

United States v. McIntosh, 236 F.3d 968, 976 (8th Cir. 2001) (where the district

court enhanced the defendant's sentence under § 841(b)(1)(A) after finding by a

preponderance of the evidence that "death or serious bodily injury" had resulted,

holding that Apprendi did not apply because the defendant was sentenced to 20

years' imprisonment, which is the authorized maximum sentence under §

841(b)(1)(C) without any enhancement).[3]  Therefore, Rodriguez' Apprendi claim

fails.[4]

B.  Causal Connection

Rodriguez next contends that there was insufficient evidence to connect his

offense with Elliot's death.  He argues that the hotel employee and Gann were

intervening factors that severed the "causal connection" between his offense and

Elliot's death because they did not call the paramedics when they observed Elliot

---

[3]    It is possible that the district court would have sentenced Rodriguez to a term of imprisonment slightly less than 240 months had it not been for the 240-month mandatory minimum for a § 841(b)(1)(C) offense where "death or serious bodily injury" resulted. However, we need not address this issue, as it was not raised by Rodriguez in his brief on appeal. See, e.g., Marek v. Singletary, 62 F.3d 1295, 1298 n.2 (11th Cir. 1995) ("Issues not clearly raised in the briefs are considered abandoned.").  Moreover, "Apprendi has no application to cases in which statutory sentencing factors trigger a mandatory minimum sentence."  Sanchez, 269 F.3d at 1269 (citing McMillan v. Pennsylvania, 477 U.S. 79, 106 S.Ct. 2411 (1986), which Apprendi, 530 U.S. at 487 n.13, 120 S.Ct. at 2361 n.13, expressly declined to overrule).

[4]    Nor does the five-year supervised release portion of Rodriguez' sentence constitute Apprendi error.  See Sanchez, 269 F.3d at 1287-88.

unconscious in the hallway. The district court enhanced Rodriguez' sentence, because it found that, but for Elliot ingesting the heroin provided by Rodriguez, Elliot would not have died.

We review a district court's findings of fact for clear error and its application of the Sentencing Guidelines de novo. See United States v. Jamieson, 202 F.3d 1293, 1295 (11th Cir. 2000). Rodriguez admitted at sentencing that he sold heroin to Elliot and that the heroin was in Elliot's system when he died. The medical examiner determined that Elliot died as a result of cardiorespiratory arrest due to heroin toxicity. Based on this evidence, we conclude that the district court's factual finding – that, but for Elliot ingesting the heroin provided by Rodriguez, Elliot would not have died – is supported by the record and does not amount to clear error.

Even assuming arguendo that an intervening cause of death could foreclose application of the "death or serious bodily injury" enhancement under §841(b)(1)(C) and U.S.S.G. § 2D1.1,[5] Rodriguez has failed to adduce facts

---

[5] While other circuits have held that the "death or serious bodily injury" enhancement contained in § 841(b)(1) does not require a finding of proximate cause or foreseeability of death, these circuits have not addressed whether there is an intervening cause exception to the enhancement provision. See e.g., United States v. McIntosh, 236 F.3d 968 (8th Cir. 2000) (holding that § 841(b)(1)(A)'s enhancement applies "without regard to the principles of proximate cause or the foreseeability of death or serious bodily injury," but declining to reach the issue of whether an intervening cause of death resulting from a controlled substance forecloses application of the statutory enhancement); United States v. Robinson, 167 F.3d 824

showing an intervening cause of death sufficient to relieve him of liability for the death. Generally, one may be held criminally liable for a victim's death even where medical negligence or mistreatment also contributed to the victim's death. See Carolyn Kelly MacWilliam, Annotation, <u>Homicide: Liability Where Death Immediately Results From Treatment or Mistreatment of Injury Inflicted by Defendant</u>, 50 A.L.R. 5th 467 (1997). In order to be entitled to a defense, there must have been gross medical negligence and such gross negligence must have been "the sole cause of the victim's death." <u>Id.</u> <u>See also</u> 40 Am. Jur. 2d <u>Homicide</u> § 18 (1999) ("Negligent treatment or neglect of an injury will not excuse a wrongdoer unless the treatment or neglect was the sole cause of death . . . ."); <u>Rose v. State</u>, 591 So. 2d 195, 196 (Fla. 4th DCA 1991) ("'[A] defendant cannot escape the penalties for an act which in point of fact produces death, which death might possibly have been averted by some possible mode of treatment. The true doctrine is that, where the wound is in itself dangerous to life, mere erroneous treatment of it or of the wounded man suffering from it will afford the defendant no protection

---

(3d Cir. 1999) (holding that § 841(b)(1)(C) has no "foreseeability of death" requirement but declining to decide whether § 841(b)(1)(C) includes an intervening or superseding cause exception); <u>United States v. Patterson</u>, 38 F.3d 139, 146 (4th Cir. 1994) (holding that § 841(b)(1)(C) does not contain a reasonable foreseeability requirement but declining to address appellant's argument that there is an intervening cause exception to the application of § 841(b)(1)(C)). In light of our disposition, we too need not decide whether there can be an intervening cause exception to the enhancement provision.

8

....'"') (quoting <u>Hallman v. State</u>, 371 So. 2d 482, 485 (Fla. 1979)).

Rodriguez points to no evidence showing that Elliot's death resulted solely from grossly negligent actions taken by Gann and the hotel employee. Instead, the evidence shows that Elliot died as a result of cardiorespiratory arrest due to heroin toxicity, and Rodriguez admitted that he gave Elliot the heroin and that the heroin was in Elliot's system when he died. There is also no evidence that Elliot would have lived had the hotel employee or Gann called the paramedics immediately upon discovering Elliot unconscious in the hallway. In fact, in his brief, Rodriguez concedes that "[i]t is an unknown question as to whether or not [Elliot's] life could have been saved if he had been immediately taken to the hospital and given appropriate and proper medical treatment at the time that his body was discovered ... in the hallway of the hotel."

It is also a basic principle of criminal law that foreseeable negligent acts of a third party do not sever the chain of causation. As the Second Circuit stated:

> In many situations giving rise to criminal liability, the death or injury is not directly caused by the acts of the defendant but rather results from intervening forces or events, such as negligent medical treatment . . . or the negligent or intentional acts of a third party. Where such intervening events are foreseeable and naturally result from a perpetrator's criminal conduct, the law considers the chain of legal causation unbroken and holds the perpetrator criminally responsible for the resulting harm.

<u>United States v. Guillette</u>, 547 F.2d 743, 749 (2d Cir. 1976). In this case, the

9

actions taken by Gann and the hotel employee when they discovered Elliot snoring in the hallway were foreseeable and naturally resulted from Rodriguez having sold Elliot the heroin. Their actions did not break the chain of legal causation.

Therefore, even if there were an intervening cause exception to the enhancement contained in § 841(b)(1)(C) and U.S.S.G. § 2D1.1, which we need not decide here, Rodriguez has adduced no facts entitling him to the benefit of such an exception.

## III. CONCLUSION

For the foregoing reasons, Rodriguez' sentence is AFFIRMED.