*1328 HULL, Circuit Judge,
concurring in the
denial of rehearing en banc, in which ANDERSON, CARNES and PRYOR, Circuit Judges, join:
We concur in this Court’s denial of rehearing en banc because Defendant Levy did not raise a claim regarding a right to a jury trial on his sentencing enhancements until after this Court had affirmed his conviction and sentence. Indeed, Levy pled guilty and concedes that he never asked for a jury trial on his sentencing enhancements either in the district court or in his direct appeal to this Court. See United States v. Levy, 374 F.3d 1023 (11th Cir.2004) (affirming conviction and sentence).
After this Court affirmed Levy’s conviction and sentence, the United States Supreme Court decided Blakely v. Washington, — U.S. -, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), extending the rule announced in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Defendant Blakely argued that he had a right to a jury trial on “all facts legally essential to his sentence.” Blakely, 124 S.Ct. at 2536. The United States Supreme Court “rejected the state’s argument that Blakely’s case was distinguishable from Apprendi because his 90-month sentence did not exceed the 10-year statutory maximum.... ” United States v. Levy, 379 F.3d 1241, 1242 (11th Cir.2004). Blakely is basically an extension of the Apprendi rule. See In re Dean, 375 F.3d 1287, 1289-90 (11th Cir.2004).
After Blakely, Levy filed a petition for rehearing in this Court and, for the first time, argued that he had a right to a jury trial regarding his federal sentencing enhancements. Although Blakely did not involve the federal sentencing guidelines, Levy argued that “the reasoning” of Ap-prendi, Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and Blakely clearly lead to the conclusion that the federal sentencing guidelines are constitutionally infirm (hereinafter referred to as Levy’s “Blakely-type” claim).
This Court properly denied Levy’s petition for rehearing based on this Court’s long-standing rule that issues raised for the first time in a petition for rehearing and not raised in an appellant’s initial brief will not be considered. See Levy, 379 F.3d at 1242-45 (collecting cases). In denying Levy’s petition for rehearing, this Court noted that
our practice has been longstanding. As we have explained, the rule requiring that issues be raised in opening briefs “serves valuable purposes, as do all of the procedural default rules, which is why we regularly apply them. See generally Presnell v. Kemp, 835 F.2d 1567, 1573-74 (11th Cir.1988).” United States v. Ardley, 273 F.3d 991, 991 (11th Cir.2001) (en banc). Importantly, this rule applies neutrally to all appellants, whether the government or the defendant.
Levy, 379 F.3d at 1244.
The dissent concedes that: (1) the Levy panel was bound by circuit precedent, see United States v. Ardley, 242 F.3d 989, 990 (11th Cir.2001) (collecting cases); and (2) this Court recently denied en banc review of the very question in this case; that is, whether the rules concerning retroactivity are subject to this Court’s procedural rules. See United States v. Ardley, 273 F.3d 991 (11th Cir.2001) (denying rehearing en banc and explaining why Defendant’s Apprendi claim was procedurally barred) (Carnes, J., concurring), cert. denied, Ardley v. United States, 535 U.S. 979, 122 S.Ct. 1457, 152 L.Ed.2d 397 (2002).
As in Ardley, there are two rules at issue in Levy’s case: (1) the rule that *1329 Supreme Court decisions are to be retroactively applied to cases on direct review; and (2) the procedural rule that entirely new constitutional issues will not be considered for the first time by this Court in a petition for rehearing. The two rules in this case are equally important, but play separate roles and answer different questions. As we explained in Ardley,
[r]etroactivity doctrine answers the question of which cases a new decision applies to, assuming that the issue involving that new decision has been timely raised and preserved. Procedural bar doctrine answers the question of whether an issue was timely raised and preserved, and if not, whether it should be decided anyway.
Ardley, 273 F.3d at 992 (Carnes, J., concurring). Many of the dissent’s arguments in this case are answered in Ardley, 273 F.3d at 991-93. In particular, Ardley,al-ready explained why the dissent improperly conflates these two rules. Id. Ardley also articulates why, if the dissent’s position was adopted, no type of procedural bar could be adopted on direct appeal. Id. at 992.
The dissent’s main focus now is that under Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), this Court is required to allow Defendant Levy to raise, for the first time, a Blakely-type issue in a petition for rehearing after this Court has issued an opinion affirming his conviction and sentence. The dissent would have retroactivity rules trump and eliminate any procedural default rule on direct appeal. Essentially, the dissent’s rule would be that a new Supreme Court decision applies retroactively per se — even if the defendant has never raised or preserved the constitutional issue and this Court has already affirmed the defendant’s conviction and sentence — as long as the defendant is still in some phase of the direct appeal process.
Nothing in Griffith, nor any other Supreme Court decision, requires this result. In fact, Supreme Court precedent indicates that the rules of retroactivity are subject to established principles of procedural default, waiver, and the like. Indeed, as outlined below, the defendant in Griffith timely preserved the constitutional error at issue during his trial and on appeal. The dissent dismisses the fact that the defendants in Griffith preserved the constitutional issue. That fact is important, however. We thus first examine Griffith in detail, and then other arguments in the dissent.
I. SUPREME COURT CASE LAW
In Griffith, the United States Supreme Court concluded that “a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases ... pending on direct review or not yet final....” Griffith, 479 U.S. at 328, 107 S.Ct. at 716. A discussion of Griffith is in order because that decision is the foundation for the dissent’s arguments. However, as explained below, nothing in Griffith saved an unpre-served error in a direct appeal.
After the Supreme Court decided Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and rejected a portion of the reasoning of Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), the Supreme Court granted certiorari in two separate criminal cases from Kentucky and Oklahoma, in which the defendants had made unsuccessful challenges under Swain to the government’s use of peremptory challenges. Griffith, 479 U.S. at 316-20, 107 S.Ct. at 709-11. In each of these cases, the defendant (prior to Batson) had preserved an objection in the trial court and at every stage of his direct appeal that the prosecu *1330 tor had exercised his peremptory challenges in a racially discriminatory manner. Griffith, 479 U.S. at 316-20, 107 S.Ct. at 709-11. The defendants made this objection at every stage even though the defendants had clearly failed to prove that the prosecutor had engaged in a pattern of challenging black jurors in a series of cases, as required by Swain. See id. (discussing procedural history of the two cases). Not surprisingly, each defendant lost at each stage of his direct appeal because each court held that the proof of discrimination was inadequate under Swain. Id. (same).
In mid-1985, the defendants in Griffith petitioned the Supreme Court for certiora-ri while their convictions were still on direct review. On April 30,1986, the United States Supreme Court decided Batson. In Batson, the Supreme Court departed from Swain's requirement of a pattern of racial discrimination in a series of cases and concluded that a criminal defendant could establish a prima facie case of racial discrimination violative of the Fourteenth Amendment, based solely on the prosecution’s use of peremptory challenges to strike members of the defendant’s race from the jury venire in the defendant’s case. Batson, 476 U.S. at 93, 96-97, 106 S.Ct. at 1721-23. Furthermore, once the defendant had made the prima facie showing, the burden shifted to the prosecution to come forward with a neutral explanation for those challenges. Id. at 97, 106 S.Ct. at 1723. On June 2, 1986, the Supreme Court granted certiorari in Griffith for the limited issue of whether Batson would be applied retroactively on direct appeal. Griffith, 479 U.S. at 320, 107 S.Ct. at 711.
The retroactive application of Batson appeared to be foreclosed by United States v. Johnson, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982), in which the Supreme Court had explained that, when a new rule of criminal procedure is a “clear break” with past precedent, as Batson was a clear break from Swain,[1] the new rule was not to be applied retroactively to cases on direct appeal. Griffith, 479 U.S. at 326, 107 S.Ct. at 715. Despite courts’ repeated conclusions that the defendants had failed to satisfy Swain, the Griffith defendants continued to argue, and therefore preserve, that the government exercised its peremptory challenges in a racially discriminatory manner.
The persistence of the Griffith defendants paid off. The Supreme Court granted their petitions, discarded the “clear break” rule described in Johnson, and applied Batson retroactively to their appeal. Griffith, 479 U.S. at 326-28, 107 S.Ct. at 715-16. The Supreme Court reversed their convictions based on considerations of fairness for defendants who were similarly situated to the defendant in Batson— that is, defendants who, like Batson, had preserved their objections to the prosecution’s race-based peremptory challenges during trial and on appeal. The Griffith Court did not require, however, that a dissimilarly situated defendant — one who did not preserve his objections to race-based peremptory challenges — would somehow benefit from the retroactive application of Batson.
Griffith dealt with a Batson situation in which the defendants properly presented and preserved their constitutional challenges to the prosecution’s use of peremptory strikes both during trial and throughout direct review. Importantly, the defendants preserved the issue by raising Batson-type challenges before the Supreme Court decided Batson.
Therefore, the dispute between the majority and the dissent in this case is largely *1331 over whether Griffith’s retroactivity rule should be extended to unpreserved error raised for the first time after a decision on the merits of a direct appeal. That is, should all defendants during any portion of direct review automatically get the benefit of retroactivity no matter when they raise the issue or is the application of the Griffith retroactivity rule subject to well-established rules regarding unpreserved error, waiver, and procedural default.
As mentioned above, Griffith dealt with a Batson claim in which the defendants properly presented and preserved their constitutional challenges to the prosecution’s use of race-based peremptory strikes both during trial and throughout direct review. Therefore, Griffith cannot, and does not, control a situation in which the defendant, such as Levy, never raised nor preserved a constitutional challenge, but, instead, raises it for the first time in a petition for rehearing after this Court has affirmed his conviction and sentence.[2]
Although the dissent dismisses the fact that the defendants in Griffith preserved their Batson-type claims, the Supreme Court has already recognized the important distinction between those litigants who preserve issues and those who do not. In Shea v. Louisiana, 470 U.S. 51, 59, 105 S.Ct. 1065, 1070 (1985), which is discussed in Griffith, the Supreme Court concluded that the new rule announced in Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), applied to cases pending on direct review at the time Edwards was decided. Notably, the Shea Court stated that “[a]s we hold, if a ease was pending on direct appeal at the time Ed-luards was decided, the appellate court must give retroactive effect to Edwards, subject, of course, to established principles of ivaiver, harmless error, and the like.” Shea, 470 U.S. at 58 n. 4, 105 S.Ct. at 1069 n. 4 (emphasis added). The dissent is unable to point to any decision where the Supreme Court applied a new constitutional rule retroactively to litigants who did not previously preserve the issue on appeal.
II. PROCEDURAL RULES
As noted above, independent of and separate from the Griffith holding is this Court’s long-standing procedural rule that issues must be properly presented in the opening briefs before this Court is required to address them. Ardley, 242 F.3d at 990 (collecting cases). As the dissent admits, the Ardley Court, in 2001, applied this long-standing procedural rule in an Apprendi-context similar to the situation presented in Levy.
In Ardley, the Supreme Court remanded the defendant’s case to this Court so that it could be reconsidered in light of Apprendi. Ardley, 242 F.3d at 990. The Ardley Court determined that the fact that the defendant failed to properly present and preserve his arguments trumped whatever merit those constitutional arguments might have, stating: “In the absence of any requirement to the contrary in either Apprendi or in the order remanding this case to us, we apply our well- *1332 established rule that issues and contentions not timely raised in the briefs are deemed abandoned.” Ardley, 242 F.3d at 990 (citing cases). This Court’s procedural rule has operated independently of Griffith for a long time because it is not inconsistent in any way with the preserved-error Batson issue addressed in Griffith. In fact, the Supreme Court itself has recognized that the retroactivity rule is “subject, of course, to established principles of waiver, harmless error, and the like.” Shea, 470 U.S. at 58 n. 4, 105 S.Ct. at 1069 n. 4. This is another way of saying that the retroactivity rule is subject to procedural rules and does not operate in a vacuum.
Because neither Griffith nor any other Supreme Court decision controls the present situation, the question, in effect, is: Should this Court change its long-standing precedent and extend Griffith to unpre-served error or should Levy, as similar defendants in the past, be held to this Court’s long-standing procedural rules?
This Court recently made that choice in Ardley and concluded, as explained above, that a defendant is bound by this Court’s procedural rules, even in light of new constitutional rights. See Ardley, 242 F.3d at 990. Therefore, as the dissent concedes, circuit precedent squarely on point mandates that we conclude that Levy cannot raise his Blakely-type issues that were not properly presented and preserved. Because this Court’s procedural rules require that all issues be raised in an appellant’s opening brief, and Levy first raised his Blakely-type claim in a petition for rehearing after a decision affirming his conviction and sentence, this Court need not consider Levy’s Blakely-type issue.
III. ADMINISTRATION OF JUSTICE
The dissent claims that if this Court does not permit Levy to raise his Blakely-type claim at this late stage, we unnecessarily invite litigants to raise a whole host of questionable issues on the off-chance the Supreme Court might reverse course on some line of precedent while their direct appeal is pending. The dissent’s logic is flawed for two reasons.
First, the dissent’s catastrophic predictions regarding the orderly administration of justice if this Court elects not to consider the defendant’s Blakely-type claim are simply incorrect and unfounded. Rather, attorneys will continue to raise issues that are within the scope of acceptable arguments. For example, the long and useless laundry list predicted by the dissent in Ardley, and again here, has not materialized on account of the plain-error standard of review. If defendants were going to raise a long and useless laundry list of objections, they already would have been doing exactly that in the district court so objections could receive full de novo review by this Court, rather than plain-error review. See Maiz v. Virani, 253 F.3d 641, 676 (11th Cir.2001) (“Plain error review is an extremely stringent form of review.” (citation omitted)); United States v. King, 73 F.3d 1564, 1572 (11th Cir.1996) (“The plain error test is difficult to meet.” (quotation marks and citations omitted)).
Second, the rule announced in Ardley and Levy is not overly harsh because nothing in our precedent prevented Levy from raising his Blakely-type claim in his initial brief on direct appeal. While it is correct that this Court’s en banc decision in United States v. Sanchez, 269 F.3d 1250 (11th Cir.2001) (en banc), means that his Blakely-type claim likely would have failed, that likely failure does not mean that Levy could not have made the argument to the panel and later in a petition for rehearing en banc. More importantly, Levy could have raised the argument to preserve the issue for certiorari review.
*1333 This is to • say that a litigant is never precluded from raising an issue simply because a previous appeal has been decided that rejects a particular argument. This is so because there is nothing prohibiting this Court sitting en banc or the Supreme Court from reconsidering or overruling arguments that had previously been rejected. See, e.g., Engle v. Isaac, 456 U.S. 107, 130, 102 S.Ct. 1558, 1573, 71 L.Ed.2d 783 (1982) (“Even a state court that has previously rejected a constitutional argument may decide, upon reflection, that the contention is valid.”).
There is a good example of the continued availability of previously foreclosed arguments in the Apprendi line of cases. In Walton v. Arizona, 497 U.S. 639, 649, 110 S.Ct. 3047, 3054-55, 111 L.Ed.2d 511 (1990), the Supreme Court held that the Arizona capital sentencing scheme did- not violate the Sixth Amendment because the additional facts found by the judge were sentencing considerations, not “element[s] of the offense of capital murder.” After Apprendi, the Supreme Court, in Ring, overruled Walton “to the extent that it allows a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for imposition of the death penalty.” Ring, 536 U.S. at 609, 122 S.Ct. at 2433. In Ring, the Supreme Court concluded that “[bjecause Arizona’s enumerated aggravating factors operate as ‘the functional equivalent of an element of a greater offense,’ ... the Sixth Amendment requires that they be found by a jury.” Id. (quoting Apprendi, 530 U.S. at 494 n. 19, 120 S.Ct. at 2365 n. 19). The defendant in Ring preserved his argument under Apprendi even though that argument appeared to be foreclosed by Walton.
More significantly, after our Sanchez decision, but before the Supreme Court’s Blakely decision, numerous defendants before this Court raised Apprendi-type arguments in their challenges to enhancements under the federal Sentencing Guidelines. In United States v. Petrie, 302 F.3d 1280, 1289-90 (11th Cir.2002), cert. denied, 538 U.S. 971, 123 S.Ct. 1775, 155 L.Ed.2d 530 (2003), United States v. Snyder, 291 F.3d 1291, 1294 n. 3 (11th Cir.2002), and United States v. Rodriguez, 279 F.3d 947, 950 n. 2 (11th Cir.2002), the defendants asserted before this Court that the district court violated their rights to a jury trial when it enhanced their sentences because a jury did not determine beyond a reasonable doubt all facts legally essential to their sentences. These cases all came after Sanchez and before Blakely and illustrate that many defendants were asserting Ap-prendi-type arguments about federal sentencing enhancements and that defendants have not been prevented from making that argument despite a prior adverse precedent of this Court.
More recently, in United States v. Reese, 382 F.3d 1308 (11th Cir.2004), the defendant, despite Sanchez, preserved his Ap-prendi-type argument to his federal sentencing enhancements in the district court. Specifically, the district court concluded that Reese possessed a firearm in connection with another felony offense because drugs were found in the glove compartment of the vehicle Reese was driving. Reese argued to the district court and to this Court that this fact finding should have been determined by a jury beyond a reasonable doubt; namely, that the presence of the drugs constituted a felony, rather than a simple possession misdemeanor. Reese asserted that the district court’s findings usurped the role of the jury and’ violated the core value of Apprendi. Reese, 382 F.3d at 1309.
Furthermore, because Reese properly preserved his Apprendi type argument both in the district court and this Court, this Court permitted Reese to file a sup *1334 plemental letter brief and address the implications of Blakely. Reese, 382 F.3d at 1309. Levy could have done the same in his petition for rehearing if he had at least raised an Apprendi-type claim in his initial brief on appeal.
As shown in Reese, Petrie, Snyder, and Rodriguez, the rule in Levy and Ardley laudably encourages counsel for defendants to become knowledgeable about Supreme Court decisions, such as Apprendi, and to consider making arguments that are based on reasonable extensions of existing Supreme Court case law. At the time Levy filed his initial brief, lawyers were clearly on notice that such Apprendi-type arguments could be reasonably advanced based on existing Supreme Court precedent.[3] This Court’s procedural rules force lawyers to look at the applicability of such arguments at an earlier stage so that they can receive either full or, at least, plain-error review by this Court or the Supreme Court.
This Court’s precedents establish a clear, consistent, and workable rule, and one that is not overly harsh.[4] As the Supreme Court has stated, “we see little reason why counsel’s failure to detect a colorable constitutional claim should be treated differently from a deliberate but equally prejudicial failure by counsel to raise such a claim.” Murray v. Carrier, 477 U.S. 478, 492, 106 S.Ct. 2639, 2647, 91 L.Ed.2d 397 (1986).
IV. WAIVER, FORFEITURE, and ABANDONMENT
The dissent also attempts to make a distinction between waiver, forfeiture, and abandonment. However, the dissent misunderstands the issue. The issue is not whether Levy’s failure to raise his Blakely-type issue necessarily constitutes waiver, forfeiture, or abandonment. Rather, the issue is whether this Court will apply its well-established procedural rules; that is, this Court will not consider claims raised in a petition for rehearing that were never raised, in any form, in a defendant’s initial brief on direct appeal.
*1335 The dissent attempts to confuse the issue by discussing the difference between waiver, forfeiture, and abandonment. The issue is not whether this Court has the power to consider issues not raised in the initial brief; of course it does. Rather, this Court, out of concerns for judicial economy and finality, has elected to adopt and apply procedural rules universally and equally. This is not only fair and consistent, but a logical extension of the Supreme Court’s decision in Shea.
In fact, the dissent’s position is internally inconsistent Although the dissent argues that this Court should permit the defendant to raise a Blakely-type claim at any point while still on direct review, the dissent recognizes that issues not raised at trial should be reviewed for plain error only. In effect, the dissent recognizes that procedural default rules relating to the timeliness of issues raised at trial should be enforced, but that this Court is without the power to enforce its own procedural default rules during the appellate process.
The dissent never explains why enforcing trial-level procedural default rules by limiting appellate review to plain error is somehow permissible under the Supreme Court’s retroactivity doctrine, but enforcing appellate-level procedural default rules is not. As Judge Carnes stated in Ardley: “If the retroactivity doctrine requires that we address issues that have been proee-durally defaulted on appeal, why does it not require that we address full bore those issues that have been procedurally defaulted at trial instead of limiting our review to plain error?” Ardley, 273 F.3d at 993 (Carnes, J., concurring).[5] This Court’s application of well-established procedural default rules is prudent and well-established. That is, “[t]he retroactivity doctrine either trumps the procedural default doctrine or it does not. Our position, which is consistent, is that it does not.” Id.
V. CONCLUSION
As in Ardley, this Court correctly denied Levy’s petition for rehearing en banc. Contrary to the dissent’s arguments, Supreme Court precedent does not mandate that rules of retroactivity automatically trump all procedural rules. Instead, Supreme Court case law clearly indicates that rules of retroactivity are subject to procedural rules, such as waiver and the like.
The uniform application of this Court’s procedural default rules provides a clear, intelligent, and consistent rule for litigants to follow: raise the issue in your initial brief or risk procedural bar. This rule applies equally to all litigants, whether the government or a criminal defendant.

. See Allen v. Hardy, 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986).

. See Anders v. Hometown Mortgage Servs., Inc., 346 F.3d 1024, 1031 (11th Cir.2003) (''[W]hile we must apply [a prior] decision to facts and circumstances sufficiently similar to those under which it arose, we are not obligated to extend the decision to different situations.’’); Watts v. BellSouth Telecomms., Inc., 316 F.3d 1203, 1207 (11th Cir.2003) ("judicial decisions cannot make law beyond the facts of the cases in which those decisions are announced.”); United States v. Aguillard, 217 F.3d 1319, 1321 (11th Cir.2000) (per curiam) ("The holdings of a prior decision can reach only as far as the facts and circumstances presented to the court in the case which produced that decision.” (citation and internal marks omitted)).

. While an attorney's failure to anticipate a change in the law does not constitute ineffective assistance of counsel, attorneys routinely make arguments based on reasonable extensions of existing Supreme Court case law. The comments of the Supreme Court dissenters may have encouraged the attorneys in Reese, Petrie, Snyder, and Rodriguez. For example, in Jones v. United States, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), Justice Kennedy noted:
Departing from this recent authority, the Court’s sweeping constitutional discussion casts doubt on sentencing practices and assumptions followed not only in the federal system but also in many States. Thus, among other unsettling consequences, today's decision intrudes upon legitimate and vital state interests, upsetting the proper federal balance. I dissent from this unfortunate and unnecessary result.
Id. at 254, 119 S.Ct. at 1229-30 (Kennedy, J., dissenting) (emphasis added). Justice O’Con-nor echoed Justice Kennedy's concerns in Ap-prendi, and stated:
Justice Kennedy rightly criticized the [Jones] Court for its failure to explain the origins, contours, or consequences of its purported constitutional principle; for the inconsistency of that principle with our prior cases; and for the serious doubt that the holding cast on sentencing systems employed by the Federal Government and States alike. Today, in what will surely be remembered as a watershed change in constitutional law, the Court imposes as a constitutional rule the principle it first identified in Jones.
Apprendi, 530 U.S. at 523-24, 120 S.Ct. at 2380 (O'Connor, J., dissenting) (emphasis added).

. In fact, in Levy's case, the panel opinion already notes: "[W]e conclude that there is no miscarriage of justice if we decline to address Blal<ely-typ& issues not raised in opening briefs on appeal.” Levy, 379 F.3d at 1243 n. 3.

. As we explained in Ardley, "[o]ne of the best indications of the narrowness of plain error review is the fact that this Court has not yet found any Apprendi error to fit within the scope of the plain error doctrine.” Ardley, 273 F.3d at 992 (Carnes, J., concurring) (collecting cases).